1
2
3

UNITED STATES DISTRICT COURT

4

DISTRICT OF NEVADA

5

* * *

6
7
8
9
10

GABRIEL HERNANDEZ, RODOLFO )
NAVA, IVAN MADRIGAL, )
FRANCISCO CASTILLO, JOEL ROSA )
DE JESUS, JUAN CARLOS )
NAVARRETE, JUAN JOSE ACOSTA )
FLORES, ISMAEL AMPARAN-COBOS, )
EFREN RUANO, JUAN PALOMERA, )
OCTAVIO ANCHONDO, ARNOLDO )
RODRIGUEZ, and JESUS ANCHONDO, )

ORDER

2:10-CV-02132-PMP-LRL

11

Plaintiffs,

12

v.

13
14
15
16

CREATIVE CONCEPTS, INC.; SPEIDEL )
ENTERPRISES, INC.; JOHN SPEIDEL, )
PAUL SCHELLY; NORTHERN )
PIPELINE CONSTRUCTION CO.; and )
NPL CONSTRUCTION CO., )

Defendants.

17

18          Presently before the Court is Plaintiffs' Motion to Strike (Doc. #11), filed on

19    January 7, 2011.  Defendant NPL Construction Co. filed an Opposition (Doc. #19) on

20    March 2, 2011.  Plaintiffs did not file a reply.

21          Also before the Court is Plaintiffs' Motion to Remand (Doc. #9), filed on January

22    7, 2011.  Defendant NPL Construction Co. filed an Opposition (Doc. #21) on March 2,

23    2011.  Plaintiffs did not file a reply.

24          Also before the Court is Defendant NPL Construction Co.'s Motion for Judgment

25    on the Pleadings (Doc. #7), filed on December 30, 2010.  Plaintiffs filed an Opposition

26    (Doc. #20) on March 2, 2011.  Defendant NPL Construction Co. filed a Reply (Doc. #23)

on March 31, 2011.  The Court held a hearing on these motions on May 3, 2011.  (Mins. of

Proceedings (Doc. #24).)

## I.  BACKGROUND

Plaintiffs are thirteen individuals who formerly were employees of Defendants

Northern Pipeline Construction Co. and NPL Construction Co. ("NPL").  (Notice of

Removal (Doc. #1), Ex. 2 ["Am. Compl."] at 1-2.)  Plaintiffs allege that in 2002, Northern

Pipeline Construction Co. and NPL introduced Plaintiffs to Defendants John Speidel,

Speidel Enterprises d/b/a Creative Concepts, and Creative Concepts, Inc. ("Creative

Concepts Defendants").  (Id. at 2.)  Plaintiffs allege that Northern Pipeline Construction

Co., NPL, and the Creative Concepts Defendants represented to Plaintiffs that Northern

Pipeline Construction Co. and NPL had contacted Creative Concepts to help Plaintiffs

immigrate to the United States.  (Id.)  According to the Amended Complaint, Creative

Concepts Defendants represented to Plaintiffs that they would review Plaintiffs'

applications to obtain labor certification from the Department of Labor, and if Plaintiffs

qualified, they would commence the labor certification process on Plaintiffs' behalf.  (Id.)

Creative Concept Defendants also represented they would assist Plaintiffs in procuring

green cards.  (Id.)  In November 2002, Plaintiffs entered into contracts with Creative

Concepts, and it was agreed amongst Plaintiffs, Creative Concepts Defendants, Northern

Pipeline Construction Co., and NPL that twenty dollars or more per week would be

deducted from each Plaintiff's payroll to pay Creative Concepts Defendants for the

immigration-related services.  (Id.)

In September 2003, Plaintiffs' applications for the labor certifications were sent

to the Department of Labor.  (Id.)  At that time, Defendant Paul Schelly ("Schelly")

represented to the Immigration and Naturalization Service that he was Plaintiffs' attorney

and/or representative.  (Id. at 2-3.)

///

2

In August 2005, the Department of Labor granted Plaintiffs' employment certifications.  (Id. at 4.)  Creative Concepts Defendants then represented they would obtain lawful resident status for each Plaintiff.  (Id.)  In October 2005, Plaintiffs, Creative Concepts, Northern Pipeline Construction Co., and NPL agreed that twenty-five dollars or more would be deducted from Plaintiffs' payroll to pay for Creative Concepts Defendants' further immigration services.  (Id.)

On October 11, 2007, the United States Citizenship and Immigration Service advised Plaintiffs via Defendant Schelly that their applications for employment authorization were denied.  (Id.)  Plaintiffs allege that this was the first time they discovered that the required forms for them to receive lawful permanent resident status and to apply for employment authorization had not been filed.  (Id.)  Plaintiffs contend that instead, Defendants falsely represented they would take care of all processing required for Plaintiffs to obtain green cards.  (Id.)

Although not specifically alleged in the Amended Complaint, in the briefing on the various motions, Plaintiffs set forth what they term a scheme by NPL to defraud Plaintiffs.  Plaintiffs contend that NPL needed skilled workers to satisfy high demand for construction projects.  NPL thus lured Plaintiffs to agree to work for NPL with false promises of helping them adjust their immigration status if they came to work for NPL. NPL knew it would not be able to assist Plaintiffs in the manner promised, but it did not matter because given the amount of time it would take for the Department of Justice and Department of Labor to come back with answers on the various petitions, NPL would have its needs met by getting Plaintiffs to work for NPL in the meantime.

Plaintiffs originally brought suit against Creative Concepts, Inc., Northern Pipeline Construction Co., and Schelly on December 4, 2009 in Nevada state court.  (Notice of Removal at ¶ 1.)  Plaintiffs filed an Amended Complaint on November 1, 2010, adding Defendants NPL Construction Company, John Speidel, and Speidel Enterprises.  (Am.

Compl.)  In the Amended Complaint, Plaintiffs assert claims for breach of contract against Creative Concepts Defendants (count one), breach of contract against Northern Pipeline Construction Co. and NPL (count two), breach of confidential relationship against Creative Concepts Defendants (count three), breach of fiduciary duty against Schelly (count four), fraudulent inducement against Creative Concepts Defendants and Schelly (count five), fraudulent inducement against Northern Pipeline Construction Co. and NPL (count six), negligent misrepresentation against Northern Pipeline Construction Co. and NPL (count seven), and negligent misrepresentation against Creative Concepts Defendants and Schelly (count eight).

Defendant NPL was served on November 9, 2010, and filed an Answer in the state court action on November 24, 2010.  (Notice of Removal at ¶ 3 & Ex. 3.)  NPL asserts in its Answer that Plaintiffs were part of a bargaining unit whose terms and conditions of employment were governed by two collective bargaining agreements ("CBA") between NPL and the Laborers' International Union of North America, Local 1271 and the Laborers' International Union of North America, Local 702.  (Id.)  NPL attached the CBAs to its Answer, one between Laborers Local #1271 and Northern Pipeline Construction Company, for the period September 1, 2001 through September 1, 2004, and another between Laborers' Local 702 and Northern Pipeline Construction Company, for the period August 1, 2007 through July 31, 2010.  (Id.)  On December 3, 2010, the Creative Concepts Defendants filed an Answer signed by Defendant John Speidel "in pro per" on behalf of himself and the two corporate Defendants.  (Notice of Removal, Ex. 5.)

Defendant NPL removed the action to this Court on December 8, 2010, on the basis of federal question jurisdiction.  NPL contends that Plaintiffs' claims are preempted by the Labor Management Relations Act ("LMRA") and will require the Court to resolve questions related to federal immigration law.  NPL attached to its removal notice a consent to removal signed by Defendant John Spiedel on behalf of himself, Creative Concepts, Inc.,

and Speidel Enterprises, Inc.  (Notice of Removal, Ex. 1.)  In the removal notice, NPL represented that Defendant Schelly had not yet been served, and thus NPL did not need to obtain his consent to remove.  (Notice of Removal at ¶ 4.)  NPL also asserted that Defendant Northern Pipeline as identified in Plaintiffs' Amended Complaint was a Minnesota corporation that was dissolved in 1996 as a result of a merger with Southwest Gas Corporation of Arizona.  (Id. at ¶ 5.)  A survivor corporation, which was registered as a Nevada corporation, was named Northern Pipeline Construction Co., which did business under the name NPL Construction Co. for several years until it formally changed its legal name to NPL Construction Co. in 2008.  (Id.)  NPL argued that to the extent Plaintiffs intended to sue the dissolved Minnesota corporation, that entity was defunct as of 1996, and therefore NPL does not need consent to remove from this Defendant either.

Defendant NPL now moves for judgment on the pleadings, arguing that Plaintiffs fail to plead fraudulent inducement and negligent misrepresentation with particularity.  NPL also argues Plaintiffs' state law claims should be dismissed as preempted by the LMRA. Alternatively, NPL argues that if the Court converts Plaintiffs' state law claims into federal claims, Plaintiffs failed to exhaust their contractual remedies and the limitations period has expired, and their claims are preempted by the National Labor Relations Act ("NLRA") and thus subject to the National Labor Relations Board's ("NLRB") exclusive jurisdiction.

Plaintiffs respond by moving to remand, moving to strike certain filings, and opposing the motion for judgment on the pleadings.  Plaintiffs move to strike certain documents because Speidel signed the documents pro per on behalf of the two corporate Defendants.  Plaintiffs seek remand, arguing the removal suffers from numerous procedural deficiencies, such as the failure to obtain consent from all Defendants and the fact that it was removed one year after the case commenced.  Plaintiffs also contend there is no basis for federal subject matter jurisdiction because there is no evidence Plaintiffs were governed by any CBA with NPL, and, in any event, Plaintiffs' claims do not allege a breach of a CBA

or raise issues that will require interpretation of any CBA or of federal immigration law. Plaintiffs oppose the motion for judgment on the pleadings on the grounds that the Court must rule on the motion to remand prior to addressing the motion for judgment on the pleadings. Plaintiffs further contend they sufficiently have pled their claims with particularity, and if they have not, they request leave to amend. Plaintiffs also reassert the same arguments regarding the lack of evidence regarding their participation in a collective bargaining unit and the lack of federal subject matter jurisdiction.

## II. PLAINTIFFS' MOTION TO STRIKE - Doc. #11

Plaintiffs move to strike (1) the consent to removal filed by the Creative Concepts Defendants; (2) the Answer filed by the Creative Concept Defendants; and (3) the Joint Statement Re: Removal (Doc. #6) filed by NPL and the Creative Concepts Defendants on the basis that for each of these filings, Speidel filed "pro per" on behalf of himself and the corporate Creative Concepts Defendants. Plaintiffs argue a corporation must be represented by counsel, and Speidel is not an attorney.

None of the Creative Concepts Defendants oppose this motion. NPL opposes with respect to the consent, arguing that a consent to remove need be given only by someone with authority to bind the corporation. NPL argues that because no attorney is required to give consent to remove, it does not matter that Speidel signed pro per on behalf of the corporate Defendants.

"A corporation may appear in federal court only through licensed counsel." United States v. High Country Broad. Co., Inc., 3 F.3d 1244, 1245 (9th Cir. 1993). Plaintiffs have presented evidence that Speidel is not an attorney. (Pls.' Mot. to Strike, Ex. 1.) No one presents evidence or argument that Speidel is an attorney. Consequently, Speidel cannot represent Creative Concepts, Inc. or Speidel Enterprises, Inc. in this litigation. The Court therefore will grant the motion to strike the Answer these Defendants filed while the action still was in state court and the Joint Statement Re: Removal (Doc. #6)

filed in this Court, but only with respect to Defendants Creative Concepts, Inc. and Speidel Enterprises, Inc.  Speidel can represent himself individually, and thus the Answer and the Joint Statement Re: Removal stand as to him personally.  Further, NPL is represented by counsel, and thus the Joint Statement Re: Removal is not stricken as to NPL.

The consent to removal present a different issue, however.  The Ninth Circuit does not require a consent to removal to be given in any particular form.  See Proctor v. Vishay Intertechnology Inc., 584 F.3d 1208, 1225 (9th Cir. 2009).  Because a removal notice must be signed pursuant to Federal Rule of Civil Procedure 11, the removing party can remove an action by representing, consistent with Rule 11, that the other defendants consent to removal without providing a written consent from the other defendants.  Id.  The Ninth Circuit thus does not require a corporate defendant to make a formal appearance through counsel to consent to removal.

Because the Ninth Circuit does not require a consent be in any particular form, the corporate Creative Concepts Defendants did not have to file a formal document which would require attorney representation in this action.  Here, Speidel signed a written consent which NPL attached to the Notice of Removal.  In the Notice of Removal, NPL's counsel represented that the Creative Concepts Defendants consented to removal, citing the attached consent.  Plaintiffs present no evidence or argument that Speidel did not consent for the corporate Defendants, or that he lacks authority to do so.  The Court therefore will deny the motion to the extent it seeks to strike the consent.

## III.  PLAINTIFFS' MOTION TO REMAND - Doc. #9

### A.  Procedural Issues

#### 1.  Consent

Pursuant to 28 U.S.C. § 1441, defendants may remove a civil action brought in a state court if the federal district court would have had original jurisdiction over the action had it been initiated in the federal district court.  "In a case involving multiple defendants,

[a]ll defendants must join in a removal petition." <u>Proctor</u>, 584 F.3d at 1224 (quotation omitted). This "rule of unanimity does not apply to nominal, unknown or fraudulently joined parties." <u>United Computer Sys., Inc. v. AT & T Corp.</u>, 298 F.3d 756, 762 (9th Cir. 2002) (quotations omitted). It also does not apply to any defendant not properly served at the time of removal. <u>Emrich v. Touche Ross & Co.</u>, 846 F.2d 1190, 1193 n.1 (9th Cir. 1988).

### a. Defendant Schelly

Even if NPL should have obtained Schelly's consent prior to removal, Schelly now consents to removal. (NPL's Opp'n, Exs. 8, 9.) The failure to obtain all requisite consent when the notice of removal is filed is a procedural defect which the Court may allow NPL to cure "by obtaining joinder of all defendants prior to the entry of judgment." <u>Destfino v. Reiswig</u>, 630 F.3d 952, 957 (9th Cir. 2011). As NPL has obtained Schelly's consent prior to judgment, the Court will permit NPL to cure the defect, and will deny the motion to remand to the extent it is based on the failure to obtain Schelly's consent.

### b. Creative Concepts, Inc. & Speidel Enterprises, Inc.

As discussed above, Speidel's consent on behalf of the corporate Creative Concepts Defendants suffices. The Court will deny the motion to remand to the extent it is based on the purported failure to obtain these Defendants' consent.

### c. Northern Pipeline Construction Co.

The Amended Complaint identifies Defendant Northern Pipeline Construction Co. as an entity which "may be served with process at their registered agent, The Corporation Trust of Company of Nevada, 6100 Neil Road, Suite 500, Reno, NV 89511." (Am. Compl. at 2.) Plaintiffs did not serve Northern Pipeline Construction Co. through this registered agent. Rather, the proof of service shows process was delivered to Robert Johnson, Assistant General Counsel, at 5241 Spring Mountain Road, Las Vegas, Nevada. (Pls.' Mot. to Remand, Ex. 2.) NPL presents the affidavit of Robert Johnson ("Johnson"),

Assistant General Counsel for Southwest Gas Corporation.  (NPL's Opp'n, Ex. 12.)
Johnson avers that he is not, and never has been, an officer, director, manager, registered
agent, or otherwise authorized recipient of service of process for either Northern Pipeline
Construction Co. or NPL.  (Id.)  Northern Pipeline Construction Co. therefore was not
properly served.

Defendant NPL also presents evidence that the entity identified in the Amended
Complaint as having the registered agent at the 6100 Neil Road address was a Minnesota
corporation that dissolved in 1996 pursuant to a merger with Southwest Gas.  (NPL's
Opp'n, Ex. 3.)  A survivor corporation named Northern Pipeline Construction Co. was
formed at the same time as this merger, but it was registered as a Nevada corporation.  (Id.)
In 2008, this new Northern Pipeline Construction Co. formally changed its legal name to
NPL Construction Co.  (Id.)  The entity which signed the two CBAs was the new Northern
Pipeline Construction Co., now Defendant NPL.  (Id.)

Defendant NPL did not need the consent of Northern Pipeline Construction Co.
NPL has established Northern Pipeline Construction Co. was not properly served.
Defendant also has established Northern Pipeline Construction Co. as identified in the
Amended Complaint was not in existence when the alleged conduct at issue in this action
took place, and thus this company is either a nominal defendant or fraudulently joined.
Plaintiffs have presented nothing to contradict Defendants' evidence.  The Court will deny
the motion to remand to the extent it is based on the purported failure to obtain Northern
Pipeline Construction Co.'s consent.

2.  Removal After One Year

Pursuant to 28 U.S.C. § 1446(b), "a case may not be removed on the basis of
jurisdiction conferred by section 1332 of this title more than 1 year after commencement of
the action."  Section 1332 refers to diversity jurisdiction.  Because this action was removed
on the basis of federal question jurisdiction, the one-year time limit does not apply.  The

1    Court therefore will deny the motion to remand to the extent it is based on the one-year time

2    limit.

3        **B.  Subject Matter Jurisdiction**

4        If the Court lacks subject matter jurisdiction, the Court must remand a removed

5    action to state court.  28 U.S.C. § 1447(c).  The Court has original federal question

6    jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the

7    United States."  28 U.S.C. § 1331.  To remove based on federal question jurisdiction, the

8    federal question must be an essential element of the plaintiff's cause of action.  Gully v.

9    First Nat'l Bank, 299 U.S. 109, 112 (1936).  The presence or absence of a federal question

10   is determined by the well-pleaded complaint rule.  Caterpillar Inc. v. Williams, 482 U.S.

11   386, 392 (1987).  Under the "well-pleaded complaint" rule, the plaintiff is the master of his

12   or her complaint, and a plaintiff may defeat removal by choosing not to plead independent

13   federal claims.  ARCO Envtl. Remediation v. Dep't of Health & Envtl. Quality, 213 F.3d

14   1108, 1114 (9th Cir. 2000).  This does not mean, however, that a plaintiff may defeat

15   removal by "omitting to plead necessary federal questions in a complaint."  Id.  If a federal

16   question is an essential element of the relief sought, a plaintiff may not avoid federal

17   jurisdiction by choosing to ignore the federal question in the complaint.  Id.  A state-created

18   cause of action arises under federal law:  "(1) where federal law completely preempts state

19   law; (2) where a claim is necessarily federal in character; or (3) where the right to relief

20   depends on the resolution of a substantial, disputed federal question."  Id.

21       "One corollary of the well-pleaded complaint rule developed in the case law . . .

22   is that Congress may so completely pre-empt a particular area that any civil complaint

23   raising this select groups of claims is necessarily federal in character."  Metro. Life Ins. Co.

24   v. Taylor, 481 U.S. 58, 63-64 (1987).  Where federal law completely preempts state law, "a

25   claim purportedly based on state law is considered to be a federal claim from its inception;

26   thus, such claims are considered to have arisen under federal law."  Ramirez v. Fox

Television Station, Inc., 998 F.2d 743, 747 (9th Cir. 1993).  Section 301(a) of the LMRA, 29 U.S.C. § 185(a), provides federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization."  Section 301 completely preempts any state law causes of action based on alleged violations of contracts between employers and labor organizations.  Ramirez, 998 F.2d at 747.  Section 301's preemptive force is "so powerful as to displace entirely any state claim based on a collective bargaining agreement, . . . and any state claim whose outcome depends on analysis of the terms of the agreement."  Young v. Anthony's Fish Grottos, Inc., 830 F.2d 993, 997 (9th Cir. 1987) (internal citations omitted).  Section 301's preemptive effect extends beyond suits alleging contract violations to preclude artful pleading of contract claims as torts.  Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 210-11 (1985).

However, "[n]ot every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by section 301 or other provisions of the federal labor law."  Chmiel v. Beverly Wilshire Hotel Co., 873 F.2d 1283, 1285 (9th Cir. 1989) (quotations omitted).  Rather, a state law claim is preempted if it is (1) "based upon a collective-bargaining agreement," or (2) "dependent upon an interpretation of the agreement."  Ramirez, 998 F.2d at 748; Aguilera v. Pirelli Armstrong Tire Corp., 223 F.3d 1010, 1014 (9th Cir. 2000).

To determine whether a claim is preempted, the Court analyzes "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA."  Burnside v. Kiewit Pac. Corp., 491 F.3d 1053, 1059-60 (9th Cir. 2007).  "If the right exists solely as a result of the CBA, then the claim is preempted, and [the Court's] analysis ends there."  Id.  However, if the right "exists independently of the CBA," the Court then must consider "whether it is nevertheless substantially dependent on analysis of a collective-bargaining agreement."  Id. (quotation omitted).  If it is dependent on interpreting the CBA, then the claim is preempted, but if it is not, "then the claim can

1   proceed under state law." Id.  Whether a claim is preempted is determined on a

2   case-by-case basis grounded in an evaluation of the plaintiff's particular claims.

3   Allis-Chalmers Corp., 471 U.S. at 220.

4          To determine whether a particular right inheres in state law or, instead, is

5   grounded in a CBA at the first step of the analysis, the Court should consider whether the

6   state law claim's "legal character" is independent of rights under the CBA, not whether the

7   plaintiff could have pursued a grievance under the CBA arising from the same set of facts.

8   Id. at 1060; Cramer v. Consol. Freightways, Inc., 255 F.3d 683, 690 (9th Cir. 2001) (en

9   banc) ("[E]ven if the CBA refers to the state law substantive right at issue, the claim is not

10  preempted so long as it may be litigated without reference to the CBA.").  For example, a

11  state law discrimination claim "need not be preempted merely because certain aspects of the

12  collective bargaining agreement govern work assignments and discharges." Detabali v. St.

13  Luke's Hosp. 482 F.3d 1199, 1203 (9th Cir. 2007) (quotation omitted).

14         At the second step of the analysis, the Court must determine whether the state law

15  claim can be resolved by "looking to" the CBA as opposed to interpreting it. Burnside, 491

16  F.3d at 1060 (quotation and alteration omitted).  This distinction is "not always clear or

17  amenable to a bright-line test." Id. (quotation omitted).  However, a state-law remedy is

18  "independent" of a CBA if "resolution of the state-law claim does not require construing

19  the collective-bargaining agreement." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S.

20  399, 407 (1988).  Referencing a CBA to "discern that none of its terms is reasonably in

21  dispute" does not rise to the level of interpreting the CBA. Burnside, 491 F.3d at 1059-60

22  (quotation omitted).  "[E]ven if dispute resolution pursuant to a collective-bargaining

23  agreement, on the one hand, and state law, on the other, would require addressing precisely

24  the same set of facts, as long as the state-law claim can be resolved without interpreting the

25  agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption

26  purposes." Lingle, 486 U.S. at 409-10.  Neither a hypothetical connection between the

claim and the CBA's terms nor a mere potentiality that interpretation or direct reliance on the CBA terms will occur will support preemption.  Humble v. Boeing Co., 305 F.3d 1004, 1010 (9th Cir. 2002); Cramer, 255 F.3d at 692 ("A creative linkage between the subject matter of the claim and the wording of a CBA provision is insufficient; rather, the proffered interpretation argument must reach a reasonable level of credibility.").

Upon the filing of a motion to remand, the removing party bears the burden of establishing jurisdictional facts by a preponderance of the evidence.  Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003) (removing party must prove amount in controversy by preponderance of the evidence based on "facts presented in the removal petition as well as any summary-judgement-type evidence relevant to the amount in controversy at the time of removal." (quotation omitted)).  NPL has presented evidence explaining that its former legal name was Northern Pipeline Construction Co., that it changed its legal name to NPL, and that it is the signatory on the two CBAs at issue.  Plaintiffs have presented no evidence to the contrary.  NPL also has presented evidence Plaintiffs agreed to have union dues deducted from their payroll and/or were identified in NPL payroll records as belonging to the union.  (NPL's Opp'n, Exs. 4, 5, 6.)  Plaintiffs present no evidence to the contrary.  NPL therefore has met its burden of proving by a preponderance of the evidence that it was a signatory to the CBAs, Plaintiffs were members of the unions, and their work was governed by the CBAs.

Plaintiffs allege NPL breached individual oral contracts with each Plaintiff related to the promise to assist Plaintiffs in adjusting their immigration status.  The United States Court of Appeals for the Ninth Circuit has held that an independent contract between an employer and employee is preempted by § 301 when the employee is subsequently hired under a CBA and the allegedly broken promise relates to a job covered by the CBA.  See Olguin v. Inspiration Consol. Copper Co., 740 F.2d 1468, 1474 (9th Cir. 1984); Young, 830 F.2d at 997-98; Bale v. Gen. Tel. Co. of Cal., 795 F.2d 775, 779 (9th Cir. 1986); Stallcop v.

Kaiser Found. Hosp., 820 F.2d 1044, 1048-49 (9th Cir. 1987); Chmiel, 873 F.2d at 1285-86; Beals v. Kiewit Pac. Co., Inc., 114 F.3d 892, 893 (9th Cir. 1997); Aguilera, 223 F.3d at 1015.

For example, in Beals, the plaintiff was working for one company when he was approached by another company with a job offer. 114 F.3d at 893. The new employer presented the plaintiff with a "move letter" that promised the plaintiff that if he agreed to leave his current employment and come work for the employer on an upcoming project that would involve substantial overtime and that would last at least two years, the employer would agree to employ the plaintiff for the duration of the project, and promised to pay a weekly subsistence allowance and moving expenses in addition to the hourly wage. Id. The employer was a party to a CBA that covered the plaintiff's position which permitted the employer to discharge employees for just cause, and which set an hourly wage lower than what was promised to the plaintiff. Id. The employer assured the plaintiff it would adhere to the move letter's terms regardless of the CBA. Id. Five weeks later, the plaintiff was assigned to a different job position, and was fired five months later. Id. The employer complied with the CBA's requirements when terminating the plaintiff. Id. at 894. The plaintiff sued for breach of contract, among other things. Id.

The Ninth Circuit held that the contractual promises the employer made in the offer of employment were "superseded by the CBA because any 'independent agreement of employment [concerning a job position covered by the CBA] could be effective only as part of the collective bargaining agreement.'" Id. (quoting Olguin, 740 F.2d at 1474). The Beals Court also noted the rule that "'[t]o the extent that the [independent agreement] is inconsistent with the provisions of the collection [sic] bargaining agreement, the bargaining agreement controls.'" Id. (quoting Olguin, 740 F.2d at 1474). The Court thus held that because the position the plaintiff was hired to fill "was covered by the CBA, the CBA controls and any claims seeking to enforce the terms of the move letter are preempted." Id.

1   The Court rejected an argument that the Supreme Court's statement in

2   Caterpillar, Inc. v. Williams that "'individual employment contracts are not inevitably

3   superseded by any subsequent collective agreement covering an individual employee, and

4   claims based upon them may arise under state law'" mandated a different result.  Id. at

5   1015-16 (quoting Caterpillar, 482 U.S. 386 (1987)).  The Beals Court contended that

6   "Caterpillar makes this statement in the context of addressing an individual employment

7   contract negotiated for a position not covered by the CBA, at a time when the employee was

8   not covered by the CBA," and thus the case did not apply to the plaintiff in Beals.  Id.; see

9   also Aguilera, 223 F.3d at 1015-16 (distinguishing Caterpillar as "inapplicable under the

10  facts of this case because the above statement addressed an individual employment contract

11  negotiated for a position not covered by the CBA, at a time when the employee was not

12  covered by a CBA," whereas in the present case the plaintiffs' positions "were at all times

13  bargaining unit positions and the appellants, though not covered by a CBA at the time the

14  alleged promise was made, had expressly acceded to the CBA by the time of their own

15  layoff").

16  Here, Plaintiffs made the alleged individual employment contracts while not

17  covered by the CBA, but then acceded to the CBA.  The CBA thus supercedes any

18  individual employment agreement under controlling Ninth Circuit law, and Plaintiffs'

19  breach of contract claim is preempted.  Because federal subject matter jurisdiction exists if

20  even one of Plaintiffs' claims is preempted by § 301, removal was proper, and the Court

21  will deny the motion to remand.  Because this case will remain in this Court, the Court will

22  order NPL to file with this Court all records and proceedings in the state court.

23  **III.  JUDGMENT ON PLEADINGS - Doc. #7**

24  Defendant NPL moves for judgment on the pleadings, arguing that because each

25  of Plaintiffs' claims are preempted, the Court either should dismiss them as preempted, or

26  convert them to LMRA or NLRA claims.  If the Court converts the claims, NPL argues it

still is entitled to judgment on the pleadings because Plaintiffs failed to exhaust their CBA remedies and the claims are untimely under the LMRA, and they are subject to the exclusive jurisdiction of the NLRB under the NLRA.  Defendant NPL further argues that the fraudulent inducement and negligent misrepresentation claims are not pled with particularity.

Plaintiffs respond that at the judgment on the pleadings stage, NPL cannot rely upon its own allegation in the Answer that a CBA controlled the parties' relationship. Plaintiffs also argue their claims are not preempted.  Finally, Plaintiffs contend they adequately have pled the two claims with particularity, and the Court should relax the standard where facts are within Defendants' sole possession.  Alternatively, Plaintiffs request leave to amend.

### A.  Preemption

The preemption law for a § 301 claim under the LMRA is set forth above.  Once a state law claim is preempted by § 301, the Court either must treat it as a § 301 claim or dismiss it as pre-empted by federal law.  Allis-Chalmers Corp., 471 U.S. at 220-21.  State and federal claims may be preempted by the NLRA if they are arguably prohibited or protected by sections 7 or 8 of the NLRA.  San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon, 359 U.S. 236, 245 (1959).

Although it would seem, given the discussion above, that Plaintiffs' breach of contract claim is preempted, the standards for what the Court considers on a motion to remand versus a motion for judgment on the pleadings leads to a different result for Defendants' motion for judgment on the pleadings.  In considering a remand motion, the Court may look beyond the pleadings.  Matheson, 319 F.3d at 1090; Cramer, 209 F.3d at 1129.  However, in resolving a judgment on the pleadings, the Court must accept as true the non-moving party's allegations and look only to the face of the non-moving party's pleadings.  Ventress v. Japan Airlines, 603 F.3d 676, 681 (9th Cir. 2010) ("A judgment on

the pleadings is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law."); <u>Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.</u>, 896 F.2d 1542, 1550 (9th Cir. 1990) (stating "judgment on the pleadings is improper when the district court goes beyond the pleadings to resolve an issue; such a proceeding must properly be treated as a motion for summary judgment").  As Plaintiffs' Amended Complaint does not mention the CBAs or otherwise suggest a basis for NLRA or LMRA preemption on any claim, the Court will deny the motion for judgment on the pleadings on the basis of preemption.

### B.  Failure to Plead With Particularity

Plaintiffs must plead fraud and negligent misrepresentation with particularity.  Fed. R. Civ. P. 9(b).  To satisfy this burden, the complaint "'must set forth more than the neutral facts necessary to identify the transaction.'"  <u>Yourish v. Cal. Amplifier</u>, 191 F.3d 983, 993 (9th Cir. 1999) (footnote omitted) (quoting <u>In re GlenFed Sec. Litig.</u>, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc)).  The "neutral facts" mean the "'time, place, and content of an alleged misrepresentation.'"  <u>Id.</u> at 993 n.10 (quoting <u>GlenFed</u>, 42 F.3d at 1547-48).  In addition to pleading these neutral facts, the plaintiff "'must set forth what is false or misleading about a statement, and why it is false.  In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading.'"  <u>Id.</u> (quoting <u>GlenFed</u>, 42 F.3d at 1548).

The Amended Complaint identifies when representations were made to them by identifying the year, and occasionally by month.  However, the Amended Complaint fails to allege who made representations to them.  The Amended Complaint states that "NPL" represented things to Plaintiffs, but NPL is a company that can act only through agents.  The Amended Complaint does not identify what individual made representations to Plaintiffs on NPL's behalf.  The Amended Complaint also does not identify how these representations were made, such as by letter, email, phone, or face-to-face conversations.

Nor does the Amended Complaint state where such representations were made, such as in Nevada, California, in a letter, or in a phone call across state or country borders.

As to what was said, the Amended Complaint alleges NPL "represented to the Plaintiffs that Northern Pipeline and NPL had contacted Creative Concepts to help Plaintiffs immigrate to the United States," and that "Defendants" had "falsely represented that they would take care of all processing required for employment authorization and to obtain Green Cards for the Plaintiffs." (Compl. at ¶¶ 10, 16.)  However, the Amended Complaint does not allege why either statement was false.  For fraudulent inducement, Plaintiffs would have to allege that at the time NPL made the alleged promises it intended not to perform.  There is no such allegation.  Plaintiffs contend the Court should employ a relaxed pleading standard for facts within Defendants' possession.  But Plaintiffs do not identify what those facts would be here.  Plaintiffs would know who made representations to them, when, by what means, what they said, and why those representations were false.  Although Plaintiffs set forth a somewhat more comprehensive theory in their briefing papers, the Court must look to the face of the Amended Complaint.  The Court therefore will grant NPL's motion to dismiss the fraudulent inducement and negligent misrepresentation claims, with leave to amend to plead with particularity.

**IV.  CONCLUSION**

IT IS THEREFORE ORDERED that Plaintiffs' Motion to Strike (Doc. #11) is hereby GRANTED in part and DENIED in part.  The motion is granted in that the Answer filed by the Creative Concepts Defendants in state court and the Joint Statement Re: Removal (Doc. #6) filed in this Court are hereby stricken, but only with respect to Defendants Creative Concepts, Inc. and Speidel Enterprises, Inc.  The motion is denied in all other respects.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Remand (Doc. #9) is hereby DENIED.

1    IT IS FURTHER ORDERED that Defendant NPL Construction Co. shall file

2  with this Court all documents filed in the state court action no later than June 6, 2011.

3    IT IS FURTHER ORDERED that Defendant NPL Construction Co.'s Motion for

4  Judgment on the Pleadings (Doc. #7) is hereby GRANTED in part and DENIED in part.

5  The motion is granted as to Plaintiffs' fraudulent inducement and negligent

6  misrepresentation claims for failure to plead with particularity.  The motion is denied in all

7  other respects.

8    IT IS FURTHER ORDERED that Plaintiffs shall file an amended complaint on

9  or before June 6, 2011.

10

11  DATED: May 9, 2011

12

13                                    _____

14                                    PHILIP M. PRO
                                      United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26