# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\*\*\*

| | |
|---|---|
| GABRIEL HERNANDEZ, *et al.*, | 2:10-cv-02132-PMP -VCF |
| Plaintiffs, | |
| vs. | **ORDER** |
| CREATIVE CONCEPTS, *et al.*, | **(Pending Discovery Motions #111, #118, #120, #134, #143, #144, and #171)** |
| Defendants. | |

Before the court is plaintiffs Gabriel Hernandez *et al*'s Motion to Compel. (#111). Defendant NPL filed a Motion for Leave to File Excess Pages (#118), an Opposition (#119), and a Motion for Protective Order (#120). Plaintiffs filed a Reply in Support of the Motion to Compel (#130). Defendant NPL filed a Reply in Support of Its Motion for Protective Order (#133), a Request for Leave to Provide Response to Plaintiffs' Second Certificate of Conference (#134), and a Response to the Certificate (#135).

Also before the court is defendant NPL's Motion for Sanctions Regarding Discovery (#143) and Motion to Compel Discovery Responses (#144). Plaintiffs filed an Opposition (#172), and defendant filed a Reply (#176).

Also before the court is defendant NPL's Motion to SEAL. (#171). The time to file an Opposition has not expired, and plaintiffs' counsel represented during the hearing that plaintiffs do not oppose the granting of the motion (#171). The court held a hearing on February 19, 2013.

. . .

. . .

**Background**

    A.      **Relevant Background**

Plaintiffs filed their first amended complaint on November 1, 2010, in the Eighth Judicial District Court, Clark County, Nevada, against defendants asserting claims for (1) breach of contract (against Creative Concepts), (2) breach of contract (against Northern Pipeline & NPL), (3) breach of confidential relationship, (4) breach of fiduciary duty, (5) fraudulent inducement, (6) fraudulent inducement, (7) negligent misrepresentation, and (8) negligent misrepresentation. (#1-3). Plaintiffs' amended complaint arises from their employment with Northern Pipeline Construction and NPL Construction Co. (hereinafter "Northern Pipeline" and "NPL") during which time they were introduced to John Speidel, Speidel Enterprises, Inc. d/b/a as Creative Concepts and Creative Concepts Inc (hereinafter jointly referred to as "Creative Concepts"). *Id.* Creative Concepts, Northern Pipeline and NPL allegedly represented to plaintiffs that they would help plaintiffs become citizens. *Id.* Plaintiffs agreed to certain terms and entered into contracts in November of 2002, with Creative Concepts to begin assisting plaintiffs in becoming citizens. *Id.* The parties agreed that $20 or more would be deducted from the plaintiffs' paychecks as payment for these services. *Id.*

Plaintiffs allege that almost a year after the agreements were entered into, applications for labor certification were sent to the Department of Labor on behalf of the plaintiffs, and Paul Shelley represented to the Immigration and Naturalization Service that he was the attorney or representative for the plaintiffs. *Id.* The Department of Labor granted the employment certifications for each plaintiff, and thereafter, the parties agreed for $25 to be taken out of their paychecks for Creative Concepts to continue to assist in immigration services by attempting to obtain lawful permanent residence status for each plaintiff. *Id.* The plaintiffs' applications for employment authorizations were denied, and at that time, plaintiffs discovered that the requisite forms to receive lawful permanent residence and to apply for employment authorization had not been filed. *Id.*

Defendants removed the action to this court on December 8, 2010, based on federal question under 28 U.S.C. § 1331. (#1). Plaintiff filed a second amended complaint on June 27, 2011, adding new parties. (#29). On September 22, 2011, the parties filed a discovery plan and scheduling order, seeking a discovery cut-off date of July 21, 2012. (#54). The court signed the discovery plan and scheduling order (#54) on September 28, 2011. (#57). (#90). On August 22, 2012, the parties filed another stipulation to extend deadlines. (#103). The court signed the stipulation on August 23, 2012. (#104).

On October 29, 2012, plaintiffs filed a motion to compel. (#111). On November 27, 2012, defendant NPL filed a motion for leave to file excess pages (#118), an opposition to the motion to compel (#119), and a motion for protective order. (#120). On December 19, 2012, plaintiffs filed a second certificate of conference (#129) and a reply in support of their motion to compel (#130). On December 27, 2012, defendant filed a reply in support of its motion for protective order (#133), a motion for leave to file response to plaintiffs' second certificate (#129) (#134), and their response to the certificate (#135). Defendant filed a motion for summary judgment on January 4, 2013. (#136). On January 6, 2013, defendant filed a motion to strike plaintiffs' expert. (#138).

The court entered a minute order on January 11, 2013, scheduling a hearing on the motion to compel (#111) for February 12, 2013. (#141). Plaintiffs filed a notice of conflict with the scheduled date (#142), and the defendant filed a response thereto (#145). Defendant filed a motion for sanctions (#143) and a motion to compel (#144) on January 14, 2013. On January 16, 2013, the court issued a minute order stating that "a hearing on the Motion for Leave to File Responsive Brief in Excess of Page Limitation (#118), Motion for a Protective Order (#120), and Request for Leave to Provide Response to Plaintiff's Second Certificate of Conference (#134) is scheduled for February 12, 2013 at 10:00 a.m. in Courtroom 3D, and that a hearing on the Defendant NPL Construction Co.'s Motion to Strike Plaintiffs' Designation of Expert Witness Dale Schwartz, Esq. and Accompanying Deficient Expert Report and to

Preclude Mr. Schwartz from Testifying (#138) is scheduled for January 25, 2013." (#147). The parties filed a stipulation to reschedule the February 12, 2013, hearing. (#150). Plaintiffs filed an opposition to the motion to strike (#138) on January 20, 2013 (the parties stipulated for an extension of the response deadline (#154)), and filed a notice of supplement to expert report on January 22, 2013 (#153).

The court held a hearing on the motion to strike (#138) on January 25, 2013 (#157), and issued a written order on January 30, 2013, granting in part and denying in part the motion to strike (#138) (#162). On February 9, 2013, defendant NPL filed a SEALED motion for summary judgment (#170) and a motion to seal (#171). Plaintiffs filed an opposition to the motion for sanctions (#143) and motion to compel (#144) on February 10, 2013. (#172). On February 15, 2013, defendant NPL filed a reply in support of its motion for sanctions (#143) and motion to compel (#144). (#176). The court held a hearing on the pending discovery motions (#111, #118, #120, #134, #143, #144, and #171) on February 19, 2013.

  **B.** **Plaintiffs Motion To Compel**

    **1.** **Plaintiffs' Relevant Facts**

Relevant to the instant motion, plaintiffs allege that defendants had a plan to cover-up the hiring of illegal workers. (#111). Plaintiffs state that "Creative Concepts teamed up with NPL management to offer their illegal workers what they purported to be a way to solve their immigration issues" (hereinafter "Program"), and that the companies held meetings discussing the illegal workers situation and how to resolve it. *Id.* Plaintiffs state that when the plaintiffs agreed to the Program offered by NPL and Creative Concepts, each of the employees was given a letter by attorney Paul Schelly informing any ICE agent that the individual was represented by counsel, and that plaintiffs were told that these letters would likely help the individual be released from ICE. *Id.* Plaintiffs assert that "no such law existed that would allow an employer to sponsor illegal aliens present in the United States for an adjustment of

their immigration status," and that "the unique opportunity provided by the LIFE Act expired on April 30, 2001 and has never been extended." *Id.*

Plaintiffs state that one of the key fact issues in this case will be: "Did NPL know that the program of was a fraud and when did they know it?" *Id.* Plaintiffs assert that at some point "NPL knew that the Program would not, could not, and never would, result in the plaintiff[s] being able to legally adjust [their] status," and that the question is **when** did they know. *Id.* Plaintiffs argue that defendants are attempting to hide information that would reveal this answer. *Id.* Plaintiffs state that NPL hired an attorney by the name of Ric Pringle sometime after the Program was launched and gave this attorney the title of Director of Employee Relations and put the entire Program in his hands. *Id.* Plaintiffs state that defendants hope to "avoid revealing documents that would show when NPL learned that the Program was a fraud by asserting the attorney-client and attorney work product privileges" regarding documents and communications involving Mr. Pringle. *Id.*

Plaintiffs contend that the privilege log produced (Exhibit 1) demonstrates that Mr. Pringle contacted an immigration attorney named Chris Brelje in early 2004, a purported expert in immigration law, and that "[n]umerous meetings, memos and other communications were held in early 2004 between Rick Pringle and Chris Brelje." *Id.* The deposition of Mike Kemper, CEO of NPL, revealed that Mr. Pringle expressed concerns about the Program "within the first month or two of [his] employment with NPL," and that Mr. Pringle said that he was going to present the Program to his friend, an immigration lawyer, in Arizona to get his opinion. *Id* (Exhibit 2). Mr. Kemper also testified that at some point Mr. Pringle expressed concerns to John Speidel. *Id.*

The privilege log also indicates that Mr. Pringle stayed in contact with Mr. Brelje from 2004 through 2007 when the plaintiffs were fired, and continued communication until 2009. *Id* (Exhibit 1). Plaintiffs allege that "Ric Pringle took no steps to inform the employees that the Program was a scam or to stop deductions from...the employees' paychecks," and instead "took over sole management of the

day-to-day operation of the program and exclusively ran the program until late 2007." *Id.* Plaintiffs state that defendants assert good faith as a defense and intend to use Mr. Pringle as a witness to support this defense, yet refuse to disclose documents that would show that the Program was not being administered in good faith. *Id.*

    **2.    Plaintiffs' Arguments**

Plaintiffs assert that defendants are refusing to respond to discovery and claiming privilege relating to the following categories of evidence:

1. "All facts, information, documents, communications and materials between Ric Pringle, Esq. and Chris Brelje, Esq. Chris Brelje was advising Ric Pringle on the legitimacy of the immigration program at issue in this litigation from 2004 until 2008.

2. All facts, documents, communications and materials that related to Ric Pringle's day-to-day running of the NPL Immigration Program from 2004 forward. NPL claims privilege under the guise that Ric Pringle was either "giving legal advice" or "gathering facts as part of an investigation to give legal advice."

3. All facts, documents, communications and materials involving meetings between executives, managers and supervisors where Ric Pringle, Esq. was in attendance, spoke, listened, or where his words were repeated.

4. All facts, instructions, documents, communications and materials passed on from Ric Pringle, Esq. to NPL's regional supervisors, managers, and foremen from 2004 to 2008.

5. All communications between NPL's current counsel and NPL's ex-employee Earl Mahan.

6. Communications between Jeffrey Laynor, Esq. and NPL's insurer.

7. Communications, documents and discussions of factual assertions in other lawsuits and legal proceedings that involved NPL drafting declarations and affidavits that related to illegal workers that were enrolled in the Immigration Program."

*Id.*

Defendant NPL has asserted attorney-client privilege and attorney work product for many of the communications between Mr. Brelje, Mr. Pringle, Mr. Kemper, and other NPL executives. (#111 Exhibit 1).

Plaintiffs argue that the attorney-client privilege is not applicable to these communications, and assert that: (1) the crime fraud exception applies, as Mr. Pringle sought the assistance of Mr. Brelje beginning in 2004, the Program spanned from 2002-2007, the communications took place during the fraud, and the communications "were used to assist the continuation of the fraud for the next three years...," (2) defendant waived the attorney-client privilege by asserting as affirmative defenses both good faith and that NPL was acting on advice of counsel, (3) NPL waived the privilege by calling Mr. Pringle as a witness, (4) the "at-issue" waiver applies, as what is "at issue" in this case is "what NPL's in-house attorneys, executives, management, supervisors, and foremen who encouraged the illegal workers to participate in the NPL Immigration Program knew and when they knew it," and that "[c]ommunications between Ric Pringle and management, supervisors, foreman and other decision makers is directly relevant to this issue," (5) the *Riggs* exception applies, as "NPL volunteered to extend the relationship it had with its undocumented employees well beyond the typical employer/employee relationship when it agreed to sponsor the employees for adjustment of their immigration status," and that "[t]his special relationship required NPL to agree to co-file documents with the Department of Labor and Department of Justice which required dual representation by the attorneys who were involved in the filing," (6) Mr. Pringle held the same title as did non-attorneys who's communications have been produced, (7) the subject matters of the communications are not privileged, (8) facts merely observed by an attorney are not privileged, (9) communications with former employees are not protected, and (10) communications between a party and its insured are not protected. (#111).

Plaintiffs also argue that the defendant cannot assert attorney work product and attorney-client privilege on all communications, and must distinguish between documents that are attorney work product and those that are attorney-client privilege. *Id.*

### 3. Defendant's Argument

Defendant states that "[i]t is black-letter law that '[t]he attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purposes of giving legal advice.'" (#120)(citing *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011)). Defendant also asserts that communications "between company employees and in-house counsel, at the direction of corporate superiors in order to secure for the corporation legal advice from its counsel, [are] protected communications." *Id* (citing *Upjohn Co. v. United States*, 449 U.S. 383 (1981)). Defendant argues that no distinction is made between inside and outside counsel, and that "while corporate counsel clearly qualifies as an "attorney" for purposes of the attorney-client privilege, courts have recognized that corporate counsel can also act in dual roles. *Id* (citing *Henderson Apartment Venture, LLC v. Miller*, 2:09-CV-01849-HDM, 2011 WL 1300143, *9 (D. Nev. Mar. 31, 2011)).

Defendants state that "Mr. Pringle's primary responsibility as general counsel was providing legal advice and direction to NPL with respect to legal matters," and that "[a]lthough Mr. Pringle on occasion wore different hats, he was not "in charge" of the Creative Concepts program nor was he involved in much work with the program other than his legal work for the company." (#120). Defendants assert that the documents withheld pertain largely to: (a) Mr. Pringle's communications with specified NPL employees to obtain information required to provide legal advice; (b) Mr Pringle's communications with NPL to convey legal advice; (c) his communications with Mr. Brelje for the purposes of receipt of legal advice, or to enable Mr. Brelje to provide that advice; (d) Mr. Pringle's notes of conversations where he carried out those functions; and (e) communications between NPL employees and other counsel for NPL in order to provide legal advice, such as preparing declarations in

other litigation and workers compensation claims. *Id.* Defendant state that none of the exceptions to the attorney-client privilege apply, and ask this court to enter a protective order "pertaining to NPL's assertion of the attorney-client privilege and attorney work product doctrine in this case." *Id.*

### 4. Discussion

As an initial matter, defendant's motion for leave to file excess pages (#118) and motion for leave to file response to plaintiffs' second certificate of conference (#134) are granted, as plaintiffs did not file oppositions and good cause exists. *See* Local Rule 7-2(d)(stating that "[t]he failure of an opposing party to file points and authorities in response to any motion shall constitute a consent to the granting of the motion."). With regard to the discovery plaintiffs seek for which NPL asserts a privilege, the court finds that, in the circumstances of this case, "[t]he proper procedure for asserting the attorney-client privilege as to particular documents, or portions thereof, [is] for [NPL] to submit them *in camera* for the court's inspection, providing an explanation of how the information fits within the privilege." *In re Horn*, 976 F.2d 1314, 1318 (9th Cir. 1992)(quoting *In re Grand Jury Witness (Salas)*, 695 F.2d 359, 362 (9th Cir.1982)). Plaintiff has made a sufficient showing that the crime-fraud exception and the "at issue" exception may, depending on the content of the log documents, apply to one or more of the communications revealing knowledge of the status of immigration law while the Program was in effect.

Federal Rule of Civil Procedure 34(a) permits each party to serve the opposing party with document requests within the scope of Rule 26(b) that are "relevant to any party's claim or defense..." or, for good cause shown, "relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b). Relevance within the meaning of Rule 26(b)(1) is considerably broader than relevance for trial purposes. *See Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978) (citation omitted). For discovery purposes, relevance means only that the materials sought are reasonably calculated to lead to the discovery of admissible evidence. *Id*.

The remaining claims against NPL are (1) breach of confidential relationship, (2) negligence, to the extent not based on negligent supervision of managers, (3) fraudulent inducement, and (4) civil RICO.  (#29).  The court finds that *what* NPL knew regarding immigration laws and whether the Program would result in the plaintiffs obtaining legal status and *when* NPL gained this knowledge is relevant to the remaining claims against NPL.  *Oppenheimer Fund*, 437 U.S. at 351.  The court recognizes, however, the importance of the attorney-client privilege and the confidentiality afforded to communications between an attorney and client for the purpose of obtaining legal advice.  *Richey*, 632 F.3d at 566.  On or before March 5, 2013, defendant NPL must provide to the court for an *in camera* review all documents identified in the privilege log (#111 Exhibit 1) that contain the following words or phrases, or any portion thereof: "Immigration and Naturalization Act," "INA," "§ 245(i)," or "LIFE Act."  If the entire production exceeds 50 pages in length, defendant NPL must provide the documents on disks in searchable PDF format.  The court will issue an order specifying which, if any, documents defendant must produce to plaintiffs and the deadline for production.  If the court orders defendant to produce documents, plaintiffs may conduct depositions of the authors and/or recipients of the documents and must complete any deposition by April 30, 2013.

      C.      **Defendant's Motion For Sanctions and To Compel**

Defendant argues that plaintiffs have continued to prolong discovery and have not complied with the court's August 23, 2012, order (#104)(hereinafter "August Order"), and that this warrants dismissal of: (1) plaintiffs' monetary claims; and (2) the causes of action brought by plaintiff Francisco Castillo, and an order: (1) compelling plaintiffs to answer NPL's Second Set of Interrogatories and respond to NPL's Third Set of Requests for Production of Documents; and (2) requiring plaintiff Francisco Castillo to appear for additional deposition examination.  (#143 and #144).

. . .

. . .

### 1. Relevant Facts

The court's August Order (#104) approved the parties' Stipulation and Request for Extension of Discovery and Related Deadlines and Stipulation and Request for Order Approving Resolution of Certain Discovery Issues (#103) (hereinafter "August Stipulation"), which was filed on August 22, 2012, after the emergency hearing held on August 15, 2012 (#106 and #107), concerning the deposition schedule. *Id.* Plaintiffs expressly conditioned their entry into the August Stipulation on NPL withdrawing its pending motion to compel discovery responses (#93). *Id.* Defendant states that plaintiffs made specific, detailed agreements as to the information and documents they would provide and a precise time table for doing so. *Id*;(#103). Plaintiffs agreed to the following:

(1) Plaintiffs shall make an immediate, good faith effort to locate and produce additional relevant documents responsive to NPL's prior discovery requests, if any exist, before their depositions.

(2) Plaintiffs shall produce any documents newly identified during their deposition on a priority basis and in any event within ten (10) business days after their respective depositions.

(3) Plaintiffs shall identify their damages expert(s) and tender their damage expert(s)' report(s) on or before November 1, 2012.

(4) Plaintiffs shall, additionally and apart from their expert witness disclosure as to damages, describe fully in writing the damages that they claim resulted from any of the acts and/or omissions of the parties in this case, including any injury, whether physical, mental, emotional, or otherwise, by September 7, 2012. Plaintiffs' description will include the nature of the injury or damage, any physical manifestations of the injury or damage, any treatment for said injury or damage, the identification of any health care provider or facility that provided such treatment, and the identity of any individual who has relevant

>   knowledge about the same. Plaintiffs will act consistently with the other agreements to disclose on a priority basis any additional documents supporting their alleged damages and/or injuries.
>
> (5) Plaintiffs shall provide access to and allow for the inspection of all of Plaintiffs' Facebook and other social media (of any format, including postings, pictures and videos) in their possession or control no later than September 7, 2012 for an "attorney's eyes only review."

Defendant argues that plaintiffs had no intention of honoring this agreement, and asserts that defendant raised concerns regarding plaintiffs' promises but that plaintiffs still failed to comply. *Id.*

### 2. Defendant's Arguments

Defendant asserts that plaintiffs failed to comply with the agreed upon terms, as (1) plaintiff Ruano did not provide his MySpace password and allegedly forgot it, (2) many plaintiffs admitted during their depositions that they had not searched for documents and plaintiff Castillo will not appear for an additional day of deposition, (3) plaintiffs have not described in sufficient detail the damages they allegedly suffered as a result of the acts or omissions of the parties, and (4) plaintiffs will not respond to discovery requests relating to the dates and times plaintiffs met with counsel. *Id.* Defendant argues that sanctions are appropriate and that the court should compel answers to the interrogatories. *Id.*

### 3. Plaintiffs' Response

Plaintiffs argue that "[a]t every step of the way Plaintiffs and Plaintiffs' counsel have responded fully to all discovery requests," and that plaintiffs have produced 2,695 pages of documents. (#172). Plaintiffs also assert that "every employer that the Plaintiffs indicated that they worked for or applied for a job with from 2007 to present has been subpoenaed by NPL resulting in hundreds more documents concerning the Plaintiffs. In addition, each Plaintiff has willing signed full authorizations allowing NPL access to all of their files with the U.S. immigration service (and corresponding departments), tax files

with the IRS, employers, and health care providers. NPL has used these authorizations to subpoena each of these persons and entities too, and collected even more documents concerning the Plaintiffs." *Id.*

Plaintiffs argue that neither sanctions nor compelling further discovery is necessary, as (1) plaintiff Ruano attempted to retrieve the password to his MySpace account, an account that he has not used in years, but was not successful, (2) many plaintiffs had already produced all the documents in their possession before their deposition and all plaintiffs have been diligent in locating and producing documents, (3) plaintiff Castillo was deposed on September 11, 2012, for 4.75 hours and on September 12, 2012, for 11.34 hours, (4) "the damages description provided to NPL sets forth every category of damages that Plaintiffs intend to seek," and the agreement between the parties specifically permitted plaintiffs to supplement their damages descriptions, and (5) that the recent request seeks discovery concerning every attorney the plaintiffs discussed the case with, and the request is not relevant to any issue in the case. *Id.*

    **4.**    **Discussion**

The court finds that ordering further discovery and awarding sanctions is not appropriate. Defendant NPL can subpoena MySpace for access to plaintiff Ruano's MySapce account (an account he testified that he has not used in years), as his attempts to retrieve the password were unsuccessful. (#172). Plaintiffs have produced thousands of pages of documents, most of which were produced before the plaintiffs' depositions, and if defendant NPL believes that the plaintiffs have not been forthcoming with documents or other discovery, defendant may ask the District Judge for limiting instructions or for the exclusion of evidence through a motion *in limine.* Plaintiffs served a description of their damages on defendants on September 17, 2012, and pursuant to the August Stipulation (#103) and August Order (#104), the plaintiffs may supplement their damages "at reasonable time periods during discovery consistent with the Federal Rules of Civil Procedure." Plaintiff Castillo was deposed for a total of 16.09 hours (#172), exceeding the two-day depositions agreed to by the parties (#99-1 Exhibits 3, 4, 5, and 6)

and upheld by the court's order (#101). *See* Fed. R. Civ. P. 30(d)(1)(stating that a deposition is normally limited to one day of 7 hours).

### D. Motion To Seal

Defendant NPL filed a motion to seal on February 9, 2013, asking this court for leave to file the motion for summary judgment (#170), supporting exhibits, and any reply under SEAL. (#171). The time to file an opposition has not expired, and plaintiffs' counsel stated during the hearing that plaintiffs do not oppose the granting of the motion to seal (#171). Defendants' motion to seal (#171) is granted.

Accordingly and for good cause shown,

IT IS ORDERED that plaintiffs Gabriel Hernandez *et al*'s Motion to Compel (#111) and defendant NPL's Motion for Protective Order (#120) are GRANTED in part and DENIED in part, as discussed above.

IT IS THEREFORE ORDERED that, on or before March 5, 2013, defendant NPL must provide to the court for an *in camera* review all documents identified in the privilege log (#111 Exhibit 1) that contain the following words or phrases, or any portion thereof: "Immigration and Naturalization Act," "INA," "§ 245(i)," or "LIFE Act." If the entire production exceeds 50 pages in length, defendant NPL must provide the documents on disks in searchable PDF format. If the court orders the defendant to produce any documents, plaintiffs may conduct depositions of the authors and/or recipients of the documents and must complete any depositions by April 30, 2013.

IT IS FURTHER ORDERED that defendant NPL's Motion for Leave to File Excess Pages (#118) is GRANTED.

IT IS FURTHER ORDERED that defendant NPL's Motion for Leave to Provide Response to Plaintiffs' Second Certificate of Conference (#134) is GRANTED.

IT IS FURTHER ORDERED that defendant NPL's Motion for Sanctions Regarding Discovery (#143) and Motion to Compel Discovery Responses (#144) are DENIED.

IT IS FURTHER ORDERED that defendant NPL's Motion to SEAL (#171) is GRANTED.

DATED this 20th day of February, 2013.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE