# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\*\*\*

| | |
|---|---|
| GABRIEL HERNANDEZ, *et al.*, | 2:10-cv-02132-PMP -VCF |
| Plaintiffs, | |
| vs. | **ORDER** |
| CREATIVE CONCEPTS, *et al.,* | (*In Camera* Review) |
| Defendants. | |

Before the court is the defendants' *In Camera* Submission of Documents Pursuant to this Court's Order (#179).

A.  **Relevant Background**

Plaintiffs filed their first amended complaint on November 1, 2010, in the Eighth Judicial District Court, Clark County, Nevada, against defendants asserting claims for (1) breach of contract (against Creative Concepts), (2) breach of contract (against Northern Pipeline & NPL), (3) breach of confidential relationship, (4) breach of fiduciary duty, (5) fraudulent inducement, (6) fraudulent inducement, (7) negligent misrepresentation, and (8) negligent misrepresentation.  (#1-3).  Plaintiffs' amended complaint arises from their employment with Northern Pipeline Construction and NPL Construction Co. (hereinafter jointly referred to as "NPL") and immigration issues handled by John Speidel of Speidel Enterprises, Inc. d/b/a as Creative Concepts and Creative Concepts Inc (hereinafter jointly referred to as "Creative Concepts").  *Id.*  Creative Concepts and NPL allegedly represented to plaintiffs that they would help plaintiffs become United States citizen through a labor certification program (hereinafter "Program").  *Id.*  Plaintiffs agreed to certain terms and entered into contracts in

November of 2002 with Creative Concepts to begin assisting plaintiffs in becoming citizens. *Id.* The parties agreed that $20 or more would be deducted from the plaintiffs' paychecks as payment for these services. *Id.* Plaintiff alleges that "the entire five-plus year process was a sham concocted" by supervisors and managers at NPL with the assistance of other defendants." (#29).

Defendants removed the action to this court on December 8, 2010, based on federal question under 28 U.S.C. § 1331. (#1). Plaintiff filed a second amended complaint on June 27, 2011, adding new parties. (#29). On September 22, 2011, the parties filed a discovery plan and scheduling order, seeking a discovery cut-off date of July 21, 2012. (#54). The court signed the discovery plan and scheduling order (#54) on September 28, 2011. (#57). (#90). On August 22, 2012, the parties filed another stipulation to extend deadlines. (#103). The court signed the stipulation on August 23, 2012. (#104).

On October 29, 2012, plaintiffs filed a motion to compel. (#111). On November 27, 2012, defendant NPL filed a motion for leave to file excess pages (#118), an opposition to the motion to compel (#119), and a motion for protective order (#120). On December 19, 2012, plaintiffs filed a second certificate of conference (#129) and a reply in support of their motion to compel (#130). On December 27, 2012, defendant NPL filed a reply in support of its motion for protective order (#133), a motion for leave to file response to plaintiffs' second certificate (#129) (#134), and its response to the certificate (#135). Defendant NPL filed a motion for summary judgment on January 4, 2013. (#136). On January 6, 2013, defendant NPL filed a motion to strike plaintiffs' expert. (#138).

The court entered a minute order on January 11, 2013, scheduling a hearing on the motion to compel (#111) for February 12, 2013. (#141). Plaintiffs filed a notice of conflict with the scheduled date (#142), and the defendant NPL filed a response thereto (#145). NPL filed a motion for sanctions (#143) and a motion to compel (#144) on January 14, 2013. On January 16, 2013, the court issued a minute order stating that "a hearing on the Motion for Leave to File Responsive Brief in Excess of Page

Limitation (#118), Motion for a Protective Order (#120), and Request for Leave to Provide Response to Plaintiff's Second Certificate of Conference (#134) is scheduled for February 12, 2013 at 10:00 a.m. in Courtroom 3D, and that a hearing on the Defendant NPL Construction Co.'s Motion to Strike Plaintiffs' Designation of Expert Witness Dale Schwartz, Esq. and Accompanying Deficient Expert Report and to Preclude Mr. Schwartz from Testifying (#138) is scheduled for January 25, 2013." (#147). The parties filed a stipulation to reschedule the February 12, 2013, hearing. (#150). Plaintiffs filed an opposition to the motion to strike (#138) on January 20, 2013 (the parties stipulated for an extension of the response deadline (#154)), and filed a notice of supplement to expert report on January 22, 2013 (#153).

The court held a hearing on the motion to strike (#138) on January 25, 2013 (#157), and issued a written order on January 30, 2013, granting in part and denying in part the motion to strike (#138) (#162). On February 9, 2013, defendant NPL filed a SEALED motion for summary judgment (#170) and a motion to seal (#171). Plaintiffs filed an opposition to the motion for sanctions (#143) and motion to compel (#144) on February 10, 2013. (#172). On February 15, 2013, defendant NPL filed a reply in support of its motion for sanctions (#143) and motion to compel (#144). (#176). The court held a hearing on the pending discovery motions (#111, #118, #120, #134, #143, #144, and #171) on February 19, 2013. (#178).

Plaintiffs asserted in their motion to compel that despite the representations made to plaintiffs, "no such law existed that would allow an employer to sponsor illegal aliens present in the United States for an adjustment of their immigration status," and that "the unique opportunity provided by the LIFE Act expired on April 30, 2001 and has never been extended." (#111). Plaintiffs stated that one of the key fact issues in this case will be: "Did NPL know that the Program of was a fraud and when did [NPL] know it?" *Id.* Plaintiffs asserted that at some point "NPL knew that the Program would not, could not, and never would, result in the plaintiff[s] being able to legally adjust [their] status," and that the question is **when** did NPL know. *Id.* Plaintiffs argued that defendant NPL is attempting to hide

information that would reveal this answer. *Id.* Plaintiffs stated that NPL hired an attorney by the name of Ric Pringle sometime after the Program was launched and gave this attorney the title of Director of Employee Relations and put the entire Program in his hands. *Id.* Plaintiffs state that defendant NPL hopes to "avoid revealing documents that would show when NPL learned that the Program was a fraud by asserting the attorney-client and attorney work product privileges" regarding documents and communications involving Mr. Pringle. *Id.*

Plaintiffs contended that the privilege log produced (Exhibit 1) demonstrates that Mr. Pringle contacted an immigration attorney named Chris Brelje in early 2004, a purported expert in immigration law, and that "[n]umerous meetings, memos and other communications were held in early 2004 between Rick Pringle and Chris Brelje." *Id.* NPL claims these communications are "attorney-client" and work-product privileged, and the plaintiffs argue that several exceptions to these privileges apply. *Id.* Defendant NPL sought a protective order and argued that the documents withheld pertain largely to: (a) Mr. Pringle's communications with specified NPL employees to obtain information required to provide legal advice; (b) Mr Pringle's communications with NPL to convey legal advice; (c) his communications with Mr. Brelje for the purposes of receipt of legal advice, or to enable Mr. Brelje to provide that advice; (d) Mr. Pringle's notes of conversations where he carried out those functions; and (e) communications between NPL employees and other counsel for NPL in order to provide legal advice, such as preparing declarations in other litigation and workers compensation claims. (#120).

On February 20, 2013, the court entered an order granting in part and denying in part plaintiffs' motion to compel (#111) and defendant NPL's motion for protective order (#120). (#179). The court held that, "in the circumstances of this case, "[t]he proper procedure for asserting the attorney-client privilege as to particular documents, or portions thereof, [is] for [NPL] to submit them *in camera* for the court's inspection, providing an explanation of how the information fits within the privilege." *In re Horn*, 976 F.2d 1314, 1318 (9th Cir. 1992)(quoting *In re Grand Jury Witness (Salas)*, 695 F.2d 359, 362

(9th Cir.1982)).'" *Id.* The court stated that "[p]laintiff has made a sufficient showing that the crime-fraud exception and the "at issue" exception may, depending on the content of the logged documents, apply to one or more of the communications revealing knowledge of the status of immigration law while the Program was in effect." *Id.* The court also stated that:

> The remaining claims against NPL are (1) breach of confidential relationship, (2) negligence, to the extent not based on negligent supervision of managers, (3) fraudulent inducement, and (4) civil RICO. (#29). The court finds that *what* NPL knew regarding immigration laws and whether the Program would result in the plaintiffs obtaining legal status and *when* NPL gained this knowledge is relevant to the remaining claims against NPL. *Oppenheimer Fund*, 437 U.S. at 351. The court recognizes, however, the importance of the attorney-client privilege and the confidentiality afforded to communications between an attorney and client for the purpose of obtaining legal advice. *Richey*, 632 F.3d at 566.

*Id.* The court ordered that, "on or before March 5, 2013, defendant NPL must provide to the court for an *in camera* review all documents identified in the privilege log (#111 Exhibit 1) that contain the following words or phrases, or any portion thereof: "Immigration and Naturalization Act," "INA," "§ 245(i)," or "LIFE Act." If the entire production exceeds 50 pages in length, defendant NPL must provide the documents on disks in searchable PDF format." *Id.*

On March 5, 2013, defendant NPL filed a notice of production of documents ordered for *in camera* inspection by the court (#184) and submitted to the court the defendant's amended privilege log and a disk containing documents that fall within the parameters of the court's February 20, 2013, order (#179).

      **B.**    ***In Camera* Review**

The Supreme Court has held that "no express provision of the Federal Rules of Evidence bars...use of *in camera* review [to determine if exceptions to the attorney-client privilege apply], and that it would be unwise to prohibit it in all instances as a matter of federal common law." *United States v. Zolin*, 491 U.S. 554, 565, 109 S. Ct. 2619, 2627, 105 L. Ed. 2d 469 (1989).

### 1.     Plaintiffs' Remaining Claims/Logged Documents

Plaintiffs' claims against defendant NPL include (1) breach of confidential relationship, (2) negligence (to the extent **not** based on negligent supervision of its managers or supervisors), (3) fraudulent inducement, and (4) civil Racketeer Influenced and Corrupt Organizations (hereinafter "RICO"). (#29 and #88).

A fiduciary or confidential relationship exists when one reposes a special confidence in another so that the latter, in equity and good conscience, is bound to act in **good faith** and with **due regard to the interests** of the one reposing the confidence. *See Executive Mgmt. Ltd. v. Ticor Title Ins. Co.*, 114 Nev. 823, 963 P.2d 465 (1998). A fiduciary has a duty to make **full and fair disclosure** of all facts which **materially affect the rights and interests** of the parties. *See Golden Nugget, Inc. v. Ham*, 95 Nev. 45, 589 P.2d 173 (1979). Defendant NPL is liable for breach of confidential relationship if the jury finds that NPL and the plaintiffs had a fiduciary relationship and NPL did not fulfill its duty to make a full and fair disclosure of all facts that materially affect the rights and interests of plaintiffs regarding their immigration status and the Program's risks/benefits. *Id.*

Negligence is the failure to do something which a reasonably careful person would do, or the doing of something which a reasonably careful person would not do, to avoid injury to themselves or others, under circumstances similar to those shown by the evidence, *i.e.* the failure to use ordinary or reasonable care. RESTATEMENT (SECOND) OF TORTS § 283; *Spaulding v. United States*, 455 F.2d 222 (9th Cir. 1972). "Ordinary or reasonable care" is that care which persons of ordinary prudence would use in order to avoid injury to themselves or others under circumstances similar to those shown by the evidence. *Id.* "To establish a negligence claim under Nevada law, a plaintiff must show "(1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages." *Williams v. Univ. Med. Ctr. of S. Nevada*, 688 F. Supp. 2d 1134, 1144 (D. Nev. 2010)(quoting *Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.*, 221 P.3d 1276, 1280 (Nev.2009)). Plaintiffs must demonstrate that

NPL owed plaintiffs a duty of care to **act reasonably** with regard to the Program to avoid injury to plaintiffs, that NPL breached that duty, and that NPL's breach caused plaintiffs' damages. *Id.*

To succeed on a claim of fraud for intentional misrepresentation (fraudulent inducement), the plaintiffs must demonstrate that (1) defendant NPL made a representation as to a past or existing material fact regarding the Program; (2) the representation was false; (3) defendant NPL **knew** the representation was false when it was made (or had **insufficient information to make the representation**); (5) the defendant intended to induce the plaintiffs to rely upon the false representation and act or to refrain from acting accordingly; (6) the plaintiffs were unaware of the falsity of NPL's representation; (7) the plaintiffs acted in reliance upon the truth of the representation; (8) the plaintiffs were justified in relying upon the representation; and (9) the plaintiffs sustained damages as a result of their reliance on the misrepresentation. *See Barmettler v. Reno Air, Inc.*, 114 Nev. 441, 446-7, 956 P.2d 1382, 1386 (1998); *Inc. v. Nevada Bell*, 108 Nev. 105, 111 825 P.2d 588, 591 (1992); *Blanchard v. Blanchard*, 108 Nev. 908, 911, 839 P.2d 1320, 1322 (1992); *Lubbe v. Barba*, 91 Nev. 596, 599, 540 P.2d 115, 117 (1975).

Plaintiffs allege that defendant NPL and the other defendants are a "widespread criminal enterprise engaged in a pattern of racketeering activity across state lines," and that this activity included mail fraud, bank fraud, wire fraud, and the collection of unlawful debt. (#29). Plaintiffs also allege that defendant NPL and the other defendants "knew that the steps they were taking were illegal" and "planned to mislead the illegal workers into continuing to work for less pay with the false promise of an adjustment of their legal status." *Id.* "In order to establish fraudulent intent [under RICO] on the part of [NPL], it must be established that [NPL] **knowingly and intentionally** attempted to deceive [plaintiffs]." 3B Fed. Jury Prac. & Instr. § 161.54 (5th ed.), 3B Fed. Jury Prac. & Instr. § 161.54 (5th ed.)(emphasis added). "To act with 'intent to defraud' means to act knowingly and with the specific

intent to deceive, ordinarily for the purpose of causing some financial loss to another or bringing about some financial gain to one's self." *Id.*

The court finds that several of the logged documents reveal <u>what</u> defendant NPL knew about the immigration laws and risks associated with the Program (compared to what it disclosed to plaintiffs) and <u>when</u> NPL gained this knowledge, which is relevant to plaintiff's claims against defendant NPL for breach of confidential relationship, negligence, fraudulent inducement, and civil RICO (as discussed above). *See* Federal Rule of Civil Procedure 34(a)*; Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978) (citation omitted)(for discovery purposes, relevance means only that the materials sought are reasonably calculated to lead to the discovery of admissible evidence).

### 2.     Exceptions To Attorney-Client Privilege

#### a.     "At Issue" Exception

"Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived." *Kaiser Found. Health Plan, Inc. v. Abbott Laboratories, Inc.*, 552 F.3d 1033, 1042 (9th Cir. 2009)(quoting *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir.1992) (citing *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir.1991)). Where a client's state of mind or knowledge, such as whether the client acted negligently or deceptively, is at issue, "the attorney-client privilege with respect to attorney-client communications that have bearing on that state of mind or knowledge may be waived." *King-Fischer Company v. United States*, 58 Fed.Cl. 570, 572 (2003). A defendant waives the attorney-client privilege where its good faith defense places knowledge of the law and its communications with counsel directly at issue. *United States v. Bilzerian,* 962 F.2d 1285, 1292 (2nd Cir.) (Circ. Denied, 502 U.S. 813, 1991). "Even if the privilege holder does not attempt to make use of the privileged communication, he may waive the privilege if he makes factual assertions, the truth of which can only be assessed by examination of the privileged communications." *In re: Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 470 (S.D.N.Y. 1996).

As demonstrated in the previous section, NPL's state of mind (intent/good faith), knowledge of the legality and benefits/risks of the Program, representations/disclosures, and allegedly negligent acts are "at issue" in this action and are necessary elements of plaintiffs' remaining claims. The court finds that several logged documents have a direct bearing on these issues and that the "at issue" exception applies. *See King-Fischer Company*, 58 Fed.Cl. at 572. Defendant NPL asserts several affirmative defenses, including (1) good faith, (2) that it acted in a "permissible way," (3) that alleged conduct was not condoned, authorized, or ratified by NPL, (4) that it "exercised reasonable care with respect to any duty owed to [p]laintiffs," (5) it "made no fraudulent and/or negligent misrepresentation," and (6) "the alleged misrepresentation was not made with fraudulent intent or scienter." (#43). The court finds that "the truth of [these factual assertions] can only be assessed by examination" of several logged communications demonstrating NPL's actual knowledge of the legalities of Program and when it gained this knowledge, and that the "at issue" exception applies to these communications. *See In re: Kidder Peabody Sec. Litig.*, 168 F.R.D. at 470; *Bilzerian*, 962 F.2d at 1292. The court finds that fairness requires disclosure of these logged documents. *Kaiser Found. Health Plan, Inc.*, 552 F.3d at 1042.

### b. Crime-Fraud Exception

The crime-fraud exception is a "generally recognized exception to th[e] [attorney-client] privilege," and applies when communications between the attorney and client are "in furtherance of future illegal conduct..." *Zolin*, 491 U.S. at 556. "It is the purpose of the crime-fraud exception to the attorney-client privilege to assure that the 'seal of secrecy'... between lawyer and client does not extend to communications 'made for the purpose of getting advice for the commission of a fraud' or crime." *Id* at 563. The court finds that the crime-fraud exception applies to several logged documents, as the documents evidence communications between NPL and counsel, where NPL is seeking advice from counsel or obtaining advice from counsel in furtherance of the alleged fraudulent acts surrounding the Program. *See Id.*

### 3.     Attorney Work-Product

"The work-product rule is not a privilege but a qualified immunity protecting from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona*, 881 F.2d 1486, 1494 (9th Cir. 1989)(citing Fed.R.Civ.P. 26(b)(3)).  "Although the rule affords special protections for work-product that reveals an attorney's mental impressions and opinions, other work-product materials nonetheless may be ordered produced upon an adverse party's demonstration of substantial need or inability to obtain the equivalent without undue hardship." *Id.*

The court finds that the attorney work-product rule does not protect NPL from disclosure of the five logged documents the court orders produced below.  It is apparent that these documents were prepared in relation to NPL's possible exposure to claims brought by the Federal government that NPL violated immigration laws, and *not* in anticipation of claims brought by employees who participated in the Program.  *See Id.*  Plaintiffs have also demonstrated (1) a substantial need for these documents, as the documents go to the heart of the remaining claims (shown above), and (2) that plaintiffs are unable to obtain this information or the equivalent, as discovery of this evidence through other means has been unsuccessful. *Id.*

### 4.     Production of Logged Documents

Upon a review of the documents contained on the disk, the court finds that the crime-fraud and "at issue" exceptions apply, that the attorney work-product rule does not protect NPL from disclosure, and that production of <u>portions</u> of some of the documents is appropriate.  Recognizing the privileges asserted by NPL and applying the exceptions narrowly, this order permits defendant to redact documents.  Disclosure of the non-redacted portions is necessary to reveal what pertinent information defendant NPL knew and when it acquired the knowledge.  The following documents must be produced to plaintiffs on or before March 27, 2013, and may be redacted as follows:

(1) Letter from Chris Brelje to Ric Pringle, dated April 8, 2004, Bates Numbers ACCB-337 - 340; Redact *after* the sentence "I have not yet reviewed any documentation relating to the work done by Creative Concepts," on page 337 through the balance of the continuing paragraph at the top of page 338. Redact Heading 2 and the last two paragraphs on page 338. These are the only permitted redactions to this document. Page 339 and 340 must be produced in un-redacted form.

(2) Letter from John Speidel to Mike Kemper and Ric Pringle, dated November 18, 2004, Bates Numbers ACCB-98 - 99; No redactions permitted.[1]

(3) Fax from Chris Brelje to Ric Pringle, dated November 4, 2005, Bates Numbers ACCB-252-254; No redactions permitted.

(4) Memorandum from Chris Brelje to NPL, dated August 15, 2007, Bates Numbers ACCB-229 - 231; Redact paragraphs 1-4 and 7; Redact the entire contents of page 231, which is a copy of a page from the C.F.R.

(5) Email from Trish Tongen to Ric Pringle (carbon copy to Chris Brelje), dated August 22, 2007, with attached Memo to Ric Pringle from Chris Brelje, Bates Numbers ACCB-222 - 228; Redact everything *after* "FROM CHRIS BRELJE-" on page 222 and all of page 223. Redact everything *after* "File No. 50128-001" on page 224 and all of the contents of pages 225 and 226. Redact everything *before* the heading "4. Employees of NPL Cannot Use the Approved Labor Certification Applications Anyway" on page 227. Redact only the first and second paragraphs under heading "IV. Summary and Recommendation" on page 228.

Accordingly and for good cause shown,

IT IS ORDERED that the defendant NPL must produce to plaintiffs the redacted documents listed above on or before March 27, 2013, simultaneously delivering a copy of the production to chambers.

---

[1] Creative Concepts President John Speidel is not NPL's attorney, rather, together with Creative Concepts, John Speidel provided a service to NPL employees referred to as the "labor certification program," which included "Creative Concepts providing for the legal representation of the employees by an attorney." (#119).

IT IS FURTHER ORDERED that plaintiffs may conduct depositions of the authors and/or recipients of the documents and must complete any depositions by April 30, 2013.

DATED this 13th day of March, 2013.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE