1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

GABRIEL HERNANDEZ, RODOLFO
NAVA, IVAN MADRIGAL,
FRANCISCO CASTILLO, JOEL ROSA
DE JESUS, JUAN CARLOS
NAVARRETE, JUAN JOSE ACOSTA
FLORES, ISMAEL AMPARAN-COBOS,
EFREN RUANO, JUAN PALOMERA,
OCTAVIO ANCHONDO, ARNOLDO
RODRIGUEZ, and JESUS ANCHONDO,

Plaintiffs,

v.

CREATIVE CONCEPTS, INC.; SPEIDEL
ENTERPRISES, INC.; JOHN SPEIDEL,
PAUL SCHELLY; NORTHERN
PIPELINE CONSTRUCTION CO.; and
NPL CONSTRUCTION CO.,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

ORDER

2:10-CV-02132-PMP-VCF

Presently before the Court is Defendant NPL Construction Co.'s ("NPL")
Request for Review of Magistrate Judge's Order Regarding In Camera Review of Attorney-
Client Privileged Documents (Doc. #185), filed on March 5, 2013.  Plaintiffs filed a
Response (Doc. #202) on March 26, 2013.

Also before the Court is Defendant NPL's Objections and Request for Review of
Magistrate Judge's Orders (Docket Nos. 190 & 194) Regarding Attorney-Client Privileged
Documents and Work Product (Doc. #195), filed on March 21, 2013.  Plaintiffs filed a
Response (Doc. #202) on March 26, 2013.

**I. BACKGROUND**

The parties are familiar with the facts of this case, and the Court will not repeat them here except where necessary.  On February 20, 2013, the Magistrate Judge ordered NPL to produce certain attorney-client and attorney work product documents identified in NPL's privilege log for <u>in camera</u> review.  (Order (Doc. #179).)  The Magistrate Judge concluded that Plaintiffs had made "a sufficient showing that the crime-fraud exception and the 'at issue' exception may, depending on the content of the log documents, apply to one or more of the communications revealing knowledge of the status of immigration law while the Program was in effect." (<u>Id.</u> at 9.)  Additionally, the Magistrate Judge found that "<u>what</u> NPL knew regarding immigration laws and whether the Program would result in the plaintiffs obtaining legal status and <u>when</u> NPL gained this knowledge is relevant to the remaining claims against NPL." (<u>Id.</u> at 10.)  The Magistrate Judge therefore ordered NPL to produce for <u>in camera</u> review any documents in the privilege log that contained "the following words or phrases, or any portion thereof: 'Immigration and Naturalization Act,' 'INA,' '§ 245(I)', or 'LIFE Act.'"  (<u>Id.</u>)

Following <u>in camera</u> review, the Magistrate Judge ruled that some of the privileged documents were relevant to Plaintiffs' remaining claims against NPL because those documents reveal what NPL knew about the Program and when NPL obtained this knowledge.  (Order (Doc. #190) at 8.)  In terms of whether any exceptions to the attorney-client privilege permitted disclosure of this relevant evidence, the Magistrate Judge concluded the "at issue" exception applied to implicitly waive the privilege because "NPL's state of mind (intent/good faith), knowledge of the legality and benefits/risks of the Program, representations/disclosures, and allegedly negligent acts are 'at issue' in this action and are necessary elements of plaintiffs' remaining claims." (<u>Id.</u> at 9.)  The Magistrate Judge found "several logged documents have direct bearing on these issues and that the 'at issue' exception applies" because NPL asserted affirmative defenses such as

good faith; that it acted in a permissible fashion; that NPL did not condone, authorize, or ratify the alleged conduct; that NPL exercised reasonable care; that NPL made no fraudulent or negligent misrepresentation; and that NPL lacked fraudulent intent.  (Id.)  The Magistrate Judge concluded "the truth of these factual assertions can only be assessed by examination of several logged communications demonstrating NPL's actual knowledge of the legalities of [the] Program and when it gained this knowledge, and [thus] the 'at issue' exception applies to these communications."  (Id. (quotation and alteration in original omitted).)

The Magistrate Judge also found the crime-fraud exception to the attorney-client privilege applied to several of the privileged documents.  (Id.)  The Magistrate Judge reached this conclusion because "the documents evidence communications between NPL and counsel, where NPL is seeking advice from counsel or obtaining advice from counsel in furtherance of the alleged fraudulent acts surrounding the Program."  (Id.)

Finally, the Magistrate Judge rejected application of the attorney work product rule because "these documents were prepared in relation to NPL's possible exposure to claims brought by the Federal government that NPL violated immigration laws, and not in anticipation of claims brought by employees who participated in the Program."  (Id. at 10.) The Magistrate Judge further found Plaintiffs demonstrated a substantial need for the privileged documents because they go to "the heart" of Plaintiffs' remaining claims, and because Plaintiffs are unable to obtain this information where discovery through other means has been "unsuccessful."  (Id.)  The Magistrate Judge therefore ordered NPL to disclose to Plaintiffs redacted versions of five identified documents on or before March 27, 2013.  (Id. at 10-11.)  The Magistrate Judge entered an Amended Order (Doc. #194) on March 19, 2013 setting forth page numbers to identify the pertinent documents and redactions at issue.

///

1    Defendant NPL now objects to the Magistrate Judge's Order (Doc. #179)
2  directing NPL to submit attorney-client privilege documents for in camera review.  NPL
3  argues Plaintiffs failed to make the requisite evidentiary showing to trigger in camera
4  review based on the crime-fraud exception, and the Magistrate Judge's failure to require
5  sufficient evidence before compelling in camera review was contrary to law.  NPL also
6  argues the Magistrate Judge's conclusion that the "at issue" exception allows for in camera
7  review is contrary to law because the privileged documents' relevance is insufficient to
8  demonstrate the "at issue" exception applies, and because the "at issue" exception applies
9  only where a party invokes its good faith reliance on advice of counsel, which NPL has not
10  done here.  Finally, NPL contends that Plaintiffs have not shown they cannot obtain the
11  information from non-privileged sources because NPL's executives have testified what they
12  knew about the Program and when they knew it.
13    NPL also objects to the Magistrate Judge's Order (Doc. #190) and Amended
14  Order (Doc. #194) compelling NPL to turn over certain redacted documents following the
15  Magistrate Judge's in camera review.  NPL argues the Magistrate Judge's finding that the
16  "at issue" exception applies to the five identified documents is contrary to law because
17  relevance and fairness to the opposing party are not sufficient bases to support an "at issue"
18  waiver, and the waiver does not apply because NPL does not seek to support a claim or
19  defense by asserting its reliance on the advice of counsel.  Finally, as to the "at issue"
20  waiver, NPL argues the Magistrate Judge's finding that Plaintiffs have no other means of
21  obtaining the information is clearly erroneous because Plaintiffs can obtain the same
22  information by deposing NPL executives.
23    NPL further objects to the Magistrate Judge's finding that the crime-fraud
24  exception applies.  NPL contends the Magistrate Judge's conclusion is clearly erroneous
25  and contrary to law because Plaintiffs failed to present sufficient proof to trigger in camera
26  review under the crime-fraud exception and the Magistrate Judge failed to consider NPL's

contrary evidence.  NPL contends that when all of the evidence is reviewed under the proper preponderance of the evidence standard, Plaintiffs failed to establish the crime-fraud exception applies.

Finally, NPL argues the documents which the Magistrate Judge ordered to be disclose are attorney work product.  NPL contends the Magistrate Judge's conclusion is contrary to law because the documents do not have to be prepared in anticipation of litigation with these Plaintiffs to be protected by the attorney work product privilege.  NPL also argues the Magistrate Judge's conclusion that Plaintiffs had shown a substantial need for the documents was clearly erroneous because Plaintiffs could depose NPL's executives to obtain the same factual information.

Plaintiffs respond that NPL's initial objection is moot because the in camera review already has taken place.  On the merits, Plaintiffs argue they presented sufficient evidence that the crime-fraud exception applies because NPL sought legal advice in relation to the Program during the Program's existence, and that advice was used to assist in continuing the alleged fraud for several years after the NPL first sought the advice.  As to the "at issue" exception, Plaintiffs argue that exception is not limited to instances where the party relies on the advice of counsel in support of the party's claim or defense.  Rather, the exception applies when the party puts its own state of mind at issue.  As to whether Plaintiffs demonstrated they were unable to obtain the information through other means, Plaintiffs argue NPL now asserts its employees can testify as to the requested information, but NPL has asserted the privilege during prior depositions when Plaintiffs attempted to obtain discovery on these topics.  As to attorney work product, Plaintiffs contend NPL did not challenge the Magistrate Judge's ruling on attorney work product.

## II.  LEGAL STANDARD

Magistrate judges statutorily are authorized to resolve "pretrial matter[s]," such as discovery disputes, subject to review by district judges under a clearly erroneous or

contrary to law standard.  28 U.S.C. § 636(b)(1)(A); <u>Grimes v. City & Cnty. of S.F.</u>, 951
F.2d 236, 240 (9th Cir. 1991).  A finding is clearly erroneous when the reviewing Court is
left with the "definite and firm conviction that a mistake has been committed."  <u>Lewis v.
Ayers</u>, 681 F.3d 992, 998 (9th Cir. 2012) (quotation omitted).  This Court may not
substitute its judgment for that of the Magistrate Judge.  <u>Grimes</u>, 951 F.2d at 241.  The
Court reviews questions of law de novo.  <u>Osband v. Woodford</u>, 290 F.3d 1036, 1041 (9th
Cir. 2002).

**III.  DISCUSSION**

The attorney-client privilege protects confidential communications between a
client and his or her attorney to obtain and dispense legal advice.  <u>United States v. Ruehle</u>,
583 F.3d 600, 607 (9th Cir. 2009).  Because the privilege "impedes full and free discovery
of the truth," the Court strictly construes the privilege.  <u>Id.</u> (quotation omitted).  The
attorney-client privilege protects only the disclosure of the confidential communications
between the client and his or her attorney; "it does not protect disclosure of the underlying
facts by those who communicated with the attorney."  <u>Admiral Ins. Co. v. U.S. Dist. Ct. for
Dist. of Ariz.</u>, 881 F.2d 1486, 1493 (9th Cir. 1989) (quotation omitted).

The attorney-client privilege is subject to various exceptions, including the
"crime-fraud" exception.  <u>In re Napster, Inc. Copyright Litig.</u>, 479 F.3d 1078, 1090 (9th Cir.
2007), <u>abrogated on other grounds by</u> <u>Mohawk Indus., Inc. v. Carpenter</u>, 558 U.S. 100
(2009).  Where the client abuses the attorney-client relationship by consulting an attorney
"for advice that will serve him in the commission of a fraud" or a crime, the privilege will
not protect the communications.  <u>Id.</u>  However, the attorney-client privilege "must
necessarily protect the confidences of wrongdoers," and thus the crime-fraud exception
does not apply where the client seeks advice based on prior wrongdoing.  <u>United States v.
Zolin</u>, 491 U.S. 554, 562 (1989).  But where the client seeks the advice for "future
wrongdoing," the crime-fraud exception will not protect communications "made for the

6

purpose of getting advice for the commission of a fraud or crime." Id. at 562-63 (internal quotation marks, citation, and emphasis omitted).  The crime-fraud exception applies "even where the attorney is unaware that his advice may further an illegal [or fraudulent] purpose." United States v. Bauer, 132 F.3d 504, 509 (9th Cir. 1997) (quotation omitted).

These principles are more easily applied when a party retains a lawyer to represent him in relation to a completed course of conduct, but less so when the party retains a lawyer to assist with business planning, counseling, or "bringing the client into compliance for past wrongs, as opposed to simply defending the client against a charge relating to past wrongs." United States v. Chen, 99 F.3d 1495, 1500 (9th Cir. 1996). Consequently, to pierce the attorney-client privilege, the party seeking disclosure based on the crime-fraud exception bears the burden of showing "the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme." In re Napster, Inc. Copyright Litig., 479 F.3d at 1090 (quotation omitted). Additionally, the party seeking disclosure must demonstrate that the attorney-client communications at issue "are sufficiently related to and were made in furtherance of the intended, or present, continuing illegality." Id. (quotation marks, citation, and emphasis omitted).

Because of the confidential nature of the communications at issue, it may be difficult for a party to make this showing absent in camera review of the privileged communications. Zolin, 491 U.S. at 569.  However, this does not mean that a party seeking disclosure based on the crime-fraud exception always is entitled to in camera review to determine whether the exception applies. Id. at 570.  Rather, where a party seeks in camera review, as opposed to seeking outright disclosure, that party must make "a showing of a factual basis adequate to support a good faith belief by a reasonable person that in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." Id. at 572 (quotation and internal citation omitted); Chen, 99 F.3d at

1502-03; see also In re Napster, Inc. Copyright Litig., 479 F.3d at 1092 (stating "the threshold for in camera review is considerably lower than that for fully disclosing documents" (internal quotation marks and citation omitted)).

If the party makes this showing, the decision whether to conduct in camera review lies within the Court's discretion. Zolin, 491 U.S. at 572. This decision is informed by "the facts and circumstances of the particular case, including, among other things, the volume of materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through in camera review, together with other available evidence then before the court, will establish that the crime-fraud exception does apply." Id.

If a party seeks outright disclosure in a civil case, that party bears the burden of showing the crime-fraud exception applies by a preponderance of the evidence. In re Napster, Inc. Copyright Litig., 479 F.3d at 1094-95. The party opposing disclosure has the right to present evidence in support of keeping the communications confidential. Id. at 1093. The Court may consider the privileged materials in addition to the evidence submitted by the parties in deciding whether the party seeking disclosure has met the burden of showing by a preponderance of the evidence that the crime-fraud exception applies. Id. at 1096; see also Zolin, 491 U.S. at 568.

The Magistrate Judge's Order (Doc. #179) directing NPL to submit a subset of documents from its privilege log for in camera review was not clearly erroneous or contrary to law. Plaintiffs made an initial showing of a factual basis adequate to support a good faith belief by a reasonable person that in camera review of the materials may reveal evidence to establish the crime-fraud exception applies. It is unlawful for an employer to employ undocumented workers knowing of their undocumented status. 8 U.S.C. § 1324a(a)(1). NPL knew in 2002 that some of its employees were not legally able to work in the United States. (Pls.' Mot. to Compel (Doc. #111), Ex. 4 at 18-19, 24.) Following the receipt of

8

letters from the Social Security Administration identifying employees whose listed social security numbers did not match the agency's information, NPL facilitated its employees' participation in the Program through Creative Concepts.  Plaintiffs were told if they participated in the Program they would legally be entitled to reside and work in the United States.  (Pls.' Mot. to Compel, Ex. 2 at 132-33.)  However, in 2004, NPL's newly-hired in-house counsel and Director, Employee Relations, Ric Pringle ("Pringle"), had concerns about the Program and Pringle presented the Program to an outside immigration attorney.  (Id. at 144-49.)  NPL's privilege log shows Pringle communicated with outside immigration counsel, Chris Brelje ("Brelje"), from April 2004 to December 2007 regarding immigration issues.  (Pls.' Mot. to Compel, Ex. 1.)  It is undisputed that Plaintiffs' participation in the Program would not lead to them being able to reside and work legally in the United States absent some change in the law.  Nevertheless, NPL continued to employ Plaintiffs and continued to deduct money from Plaintiffs' paychecks to pay Creative Concepts for their participation in the Program until NPL fired Plaintiffs in December 2007.

Plaintiffs presented evidence that NPL obtained a substantial benefit from the Program because it did not have to hire and retrain workers to replace any workers fired due to ineligibility to work in the United States.  (Pls.' Mot. to Compel, Ex. 2 at 154-55.)  A former NPL manager opined that losing all of the undocumented workers at once would have had a significant impact on NPL's operations:  "It would have downsized our organization at that time, we would have had to downsize the organization and start retraining again.  We wouldn't have been able to meet our obligations with our customers."  (Pls.' Mot. to Compel, Ex. 3 at 36.)  The fact that NPL's chief executive officer, Mike Kemper ("Kemper"), opined that this loss of staff would not "result in any substantial, long term impact on NPL or that it would cause NPL to default on its customer contracts," does not negate the fact that NPL enjoyed an ongoing benefit by continuing to employ Plaintiffs even though it knew the employees were undocumented and it knew the Program would not

result in adjustment of their status absent some change in the law.  (Def.'s Opp'n to Pls.' Mot. to Compel (Doc. #119), Ex. 11 at 4.)  NPL continued in this course of conduct for three years, during which time it consulted Brelje as shown by the privilege log.

The evidence and undisputed facts therefore are adequate to support a good faith belief by a reasonable person that in camera review of the materials may reveal evidence that NPL was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme.  NPL's consultation with Brelje was not limited to prior, completed acts.  Rather, NPL continued to employ individuals it knew were not legally employable and NPL continued to deduct funds from Plaintiffs' paychecks for their participation in the Program.  A reasonable person in good faith could presume Brelje would have correctly advised NPL that a change in the law was necessary for Plaintiffs to adjust their status and that at least some of the attorney-client communications at issue throughout the three-year period are sufficiently related to and were made in furtherance of NPL's continued employment of undocumented workers and continued deductions from their paychecks for a Program NPL knew would not result in adjustment of status.

Given the nature of the confidential communications, the Magistrate Judge's decision that in camera review was appropriate to determine whether, in light of this evidence and upon review of the privileged communications, the crime-fraud exception applies was neither clearly erroneous nor contrary to law.  Nor did the Magistrate Judge abuse his discretion in determining that in camera review was appropriate in light of the facts and circumstances of the case, the limited number of documents subject to review, and the documents' potential importance to the case.  The Court therefore will overrule Defendants' objections to the Magistrate Judge's Order (Doc. #179) compelling in camera review.

The Court also overrules Defendants' objections to the Magistrate Judge's Orders (Doc. #190, #194) compelling disclosure based on the crime-fraud exception.  The

Magistrate Judge's decision that the cited documents are subject to disclosure under the crime-fraud exception was not clearly erroneous or contrary to law.  In addition to the above evidence, an in camera review of the identified five documents could lead a reasonable fact finder to determine NPL used Brelje's advice to determine when the risks of its course of conduct outweighed the benefits.  The evidence does not compel that conclusion, and it is not the only reasonable view of the evidence.  But the Court cannot say the Magistrate Judge's conclusion was clearly erroneous or contrary to law.

For the same reasons, the Court will overrule Defendants' objection based on the attorney work product privilege.  A client waives his right to assert the attorney work product privilege for both ordinary and opinion work product when the client consults the attorney in furtherance of a crime or fraud.  See, e.g., In re Green Grand Jury Proceedings, 492 F.3d 976, 980-81 (8th Cir. 2007); In re Grand Jury Proceedings #5 Empanelled Jan. 28, 2004, 401 F.3d 247, 251 (4th Cir. 2005); In re Grand Jury Proceedings, 867 F.2d 539, 541 (9th Cir. 1989); In re Antitrust Grand Jury, 805 F.2d 155, 164 (6th Cir. 1986); In re Special Sept. 1978 Grand Jury (II), 640 F.2d 49, 63 (7th Cir. 1980).

The Court therefore overrules Defendants' objections to the Magistrate Judge's Orders directing an in camera review and compelling disclosure of the five identified documents.  Defendants must disclose the documents with the identified redactions to Plaintiffs on or before April 12, 2013.  This Court will not stay the order of disclosure beyond April 12, 2013.

**IV.  CONCLUSION**

IT IS THEREFORE ORDERED that Defendant NPL Construction Co.'s Request for Review of Magistrate Judge's Order Regarding In Camera Review of Attorney-Client Privileged Documents (Doc. #185) is hereby OVERRULED.

///

///

IT IS FURTHER ORDERED that Defendant NPL Construction Co.'s Objections and Request for Review of Magistrate Judge's Orders (Docket Nos. 190 & 194) Regarding Attorney-Client Privileged Documents and Work Product (Doc. #195) is hereby OVERRULED.

IT IS FURTHER ORDERED that Defendants must disclose the five documents with the redactions as identified in the Magistrate Judge's Order (Doc. #194) on or before April 12, 2013.  This Court will grant no further stays or extensions in relation to this disclosure.

IT IS FURTHER ORDERED that Plaintiffs' Emergency Motion for Expedited Review and Reconsideration of the Court's Order Granting a Stay of Document Production (Doc. #204) is hereby DENIED as moot.


DATED: April 5, 2013


_____
PHILIP M. PRO
United States District Judge