# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

## ***

|  |  |
|---|---|
| GABRIEL HERNANDEZ, *et al.*, | 2:10-cv-02132-PMP -VCF |
| Plaintiffs, |  |
| vs. | **ORDER** |
| CREATIVE CONCEPTS, *et al.*, | **(Motion for Clarification of a Portion of the Court's Order #192 and Motion to Stay and Extend Discovery Deadline #209)** |
| Defendants. |  |

Before the court is defendant NPL's Motion for Clarification of a Portion of the Court's Order. (#192). Plaintiffs' filed an opposition (#233), and NPL did not filed a Reply.

Also before the court is the plaintiffs' Motion to Stay and Extend the Discovery Deadline. (#209). Defendant NPL filed an Opposition (#224), and plaintiffs did not file a Reply. The court held a hearing on April 19, 2013.

## A.    Relevant Background

Plaintiffs filed their first amended complaint on November 1, 2010, in the Eighth Judicial District Court, Clark County, Nevada, against defendants asserting claims for (1) breach of contract (against Creative Concepts), (2) breach of contract (against Northern Pipeline & NPL), (3) breach of confidential relationship, (4) breach of fiduciary duty, (5) fraudulent inducement, (6) fraudulent inducement, (7) negligent misrepresentation, and (8) negligent misrepresentation. (#1-3). Plaintiffs' amended complaint arises from their employment with Northern Pipeline Construction and NPL Construction Co. (hereinafter jointly referred to as "NPL") and immigration issues handled by John Speidel of Speidel Enterprises, Inc. d/b/a as Creative Concepts and Creative Concepts Inc (hereinafter

jointly referred to as "Creative Concepts").  *Id.*  Creative Concepts and NPL allegedly represented to plaintiffs that they would help plaintiffs become United States citizen through a labor certification program (hereinafter "Program").  *Id.*  Plaintiffs agreed to certain terms and entered into contracts in November of 2002 with Creative Concepts to begin assisting plaintiffs in becoming citizens.  *Id.*  The parties agreed that $20 or more would be deducted from the plaintiffs' paychecks as payment for these services.  *Id.*  Plaintiff alleges that "the entire five-plus year process was a sham concocted" by supervisors and managers at NPL with the assistance of other defendants."  (#29).

Defendants removed the action to this court on December 8, 2010, based on federal question under 28 U.S.C. § 1331.  (#1).  Plaintiff filed a second amended complaint on June 27, 2011, adding new parties.  (#29).  On September 22, 2011, the parties filed a discovery plan and scheduling order, seeking a discovery cut-off date of July 21, 2012.  (#54).  The court signed the discovery plan and scheduling order (#54) on September 28, 2011.  (#57).  (#90).  On August 22, 2012, the parties filed another stipulation to extend deadlines.  (#103).  The court signed the stipulation on August 23, 2012.  (#104).

On October 29, 2012, plaintiffs filed a motion to compel.  (#111).  On November 27, 2012, defendant NPL filed a motion for leave to file excess pages (#118), an opposition to the motion to compel (#119), and a motion for protective order (#120).  On December 19, 2012, plaintiffs filed a second certificate of conference (#129) and a reply in support of their motion to compel (#130).  On December 27, 2012, defendant NPL filed a reply in support of its motion for protective order (#133), a motion for leave to file response to plaintiffs' second certificate (#129) (#134), and its response to the certificate (#135).  Defendant NPL filed a motion for summary judgment on January 4, 2013.  (#136). On January 6, 2013, defendant NPL filed a motion to strike plaintiffs' expert.  (#138).

The court entered a minute order on January 11, 2013, scheduling a hearing on the motion to compel (#111) for February 12, 2013.  (#141).  Plaintiffs filed a notice of conflict with the scheduled

date (#142), and the defendant NPL filed a response thereto (#145).  NPL filed a motion for sanctions (#143) and a motion to compel (#144) on January 14, 2013.  On January 16, 2013, the court issued a minute order stating that "a hearing on the Motion for Leave to File Responsive Brief in Excess of Page Limitation (#118), Motion for a Protective Order (#120), and Request for Leave to Provide Response to Plaintiff's Second Certificate of Conference (#134) is scheduled for February 12, 2013 at 10:00 a.m. in Courtroom 3D, and that a hearing on the Defendant NPL Construction Co.'s Motion to Strike Plaintiffs' Designation of Expert Witness Dale Schwartz, Esq. and Accompanying Deficient Expert Report and to Preclude Mr. Schwartz from Testifying (#138) is scheduled for January 25, 2013." (#147).  The parties filed a stipulation to reschedule the February 12, 2013, hearing.  (#150).  Plaintiffs filed an opposition to the motion to strike (#138) on January 20, 2013 (the parties stipulated for an extension of the response deadline (#154)), and filed a notice of supplement to expert report on January 22, 2013 (#153).

The court held a hearing on the motion to strike (#138) on January 25, 2013 (#157), and issued a written order on January 30, 2013, granting in part and denying in part the motion to strike (#138) (#162).  On February 9, 2013, defendant NPL filed a SEALED motion for summary judgment (#170) and a motion to seal (#171).  Plaintiffs filed an opposition to the motion for sanctions (#143) and motion to compel (#144) on February 10, 2013.  (#172).  On February 15, 2013, defendant NPL filed a reply in support of its motion for sanctions (#143) and motion to compel (#144).  (#176).  The court held a hearing on the pending discovery motions (#111, #118, #120, #134, #143, #144, and #171) on February 19, 2013.  (#178).

Plaintiffs asserted in their motion to compel that despite the representations made to plaintiffs, "no such law existed that would allow an employer to sponsor illegal aliens present in the United States for an adjustment of their immigration status," and that "the unique opportunity provided by the LIFE Act expired on April 30, 2001 and has never been extended."  (#111).  Plaintiffs stated that one of the key fact issues in this case will be: "Did NPL know that the Program of was a fraud and when did [NPL]

know it?"  *Id.*  Plaintiffs asserted that at some point "NPL knew that the Program would not, could not, and never would, result in the plaintiff[s] being able to legally adjust [their] status," and that the question is **when** did NPL know.  *Id.*  Plaintiffs argued that defendant NPL is attempting to hide information that would reveal this answer.  *Id.*  Plaintiffs stated that NPL hired an attorney by the name of Ric Pringle sometime after the Program was launched and gave this attorney the title of Director of Employee Relations and put the entire Program in his hands.  *Id.*  Plaintiffs state that defendant NPL hopes to "avoid revealing documents that would show when NPL learned that the Program was a fraud by asserting the attorney-client and attorney work product privileges" regarding documents and communications involving Mr. Pringle.  *Id*.

Plaintiffs contended that the privilege log produced (Exhibit 1) demonstrates that Mr. Pringle contacted an immigration attorney named Chris Brelje in early 2004, a purported expert in immigration law, and that "[n]umerous meetings, memos and other communications were held in early 2004 between Rick Pringle and Chris Brelje."  *Id.*  NPL claims these communications are "attorney-client" and work-product privileged, and the plaintiffs argue that several exceptions to these privileges apply.  *Id.* Defendant NPL sought a protective order and argued that the documents withheld pertain largely to: (a) Mr. Pringle's communications with specified NPL employees to obtain information required to provide legal advice; (b) Mr Pringle's communications with NPL to convey legal advice; (c) his communications with Mr. Brelje for the purposes of receipt of legal advice, or to enable Mr. Brelje to provide that advice; (d) Mr. Pringle's notes of conversations where he carried out those functions; and (e) communications between NPL employees and other counsel for NPL in order to provide legal advice, such as preparing declarations in other litigation and workers compensation claims.  (#120).

On February 20, 2013, the court entered an order granting in part and denying in part plaintiffs' motion to compel (#111) and defendant NPL's motion for protective order (#120).  (#179).  The court held that, "in the circumstances of this case, "[t]he proper procedure for asserting the attorney-client

privilege as to particular documents, or portions thereof, [is] for [NPL] to submit them *in camera* for the court's inspection, providing an explanation of how the information fits within the privilege." *In re Horn*, 976 F.2d 1314, 1318 (9th Cir. 1992)(quoting *In re Grand Jury Witness (Salas)*, 695 F.2d 359, 362 (9th Cir.1982))." *Id.* The court stated that "[p]laintiff has made a sufficient showing that the crime-fraud exception and the "at issue" exception may, depending on the content of the logged documents, apply to one or more of the communications revealing knowledge of the status of immigration law while the Program was in effect." *Id.* The court also stated that:

> The remaining claims against NPL are (1) breach of confidential relationship, (2) negligence, to the extent not based on negligent supervision of managers, (3) fraudulent inducement, and (4) civil RICO. (#29). The court finds that *what* NPL knew regarding immigration laws and whether the Program would result in the plaintiffs obtaining legal status and *when* NPL gained this knowledge is relevant to the remaining claims against NPL. *Oppenheimer Fund*, 437 U.S. at 351. The court recognizes, however, the importance of the attorney-client privilege and the confidentiality afforded to communications between an attorney and client for the purpose of obtaining legal advice. *Richey*, 632 F.3d at 566.

*Id.* The court ordered that, "on or before March 5, 2013, defendant NPL must provide to the court for an *in camera* review all documents identified in the privilege log (#111 Exhibit 1) that contain the following words or phrases, or any portion thereof: "Immigration and Naturalization Act," "INA," "§ 245(i)," or "LIFE Act." If the entire production exceeds 50 pages in length, defendant NPL must provide the documents on disks in searchable PDF format." *Id.*

On March 5, 2013, defendant NPL filed a notice of production of documents ordered for *in camera* inspection by the court (#184) and submitted to the court the defendant's amended privilege log and a disk containing documents that fall within the parameters of the court's February 20, 2013, order (#179). On March 5, 2013, defendant NPL filed an objection to the court's order (#179). (#185). On March 13, 2013, after conducting an *in camera* review of the documents provided to the court, the court entered an order addressing the privileged nature of the documents. (#190). The court held that "several of the logged documents reveal <u>what</u> defendant NPL knew about the immigration laws and

risks associated with the Program (compared to what it disclosed to plaintiffs) and <u>when</u> NPL gained this knowledge, and that this information is relevant to plaintiff's claims against defendant NPL for breach of confidential relationship, negligence, fraudulent inducement, and civil RICO..." *Id.* The court also held that the "at issue" exception and the crime-fraud exception apply to several logged documents, and that the attorney-work product doctrine does not protect NPL from disclosure of certain logged documents. *Id.* The court ordered defendant NPL to "produce to plaintiffs the redacted documents listed [therein] on or before March 27, 2013, simultaneously delivering a copy of the production to chambers." *Id.* The court also ordered that "plaintiffs may conduct depositions of the authors and/or recipients of the documents and must complete any depositions by April 30, 2013." *Id.*

On March 15, 2013, defendant NPL filed the instant motion for clarification of a portion of the court's order (#190). (#192). On March 19, 2013, the court entered an order scheduling a hearing on the motion for clarification (#192). (#193). On March 19, 2013, the court entered an amended order on the *in camera* review. (#194). Defendant NPL filed an objection to the court's order (#190) and amended order (#194). On March 21, 2013, defendant NPL filed an *emergency* motion to stay. (#196). On March 25, 2013, defendant NPL filed another *emergency* motion to stay. (#199). On March 26, 2013, the Honorable District Judge Phillip M. Pro issued an order granting the motion to stay (#199) and ordering that "Defendant NPL Construction Co. need not produce the redacted documents on or before March 27, 2013 as directed by the Magistrate Judge's March 18, 2013 Order (Doc. #194), pending review of the Magistrate Judge's decision and further order of the Court." (#203).

On March 26, 2013, the plaintiffs filed an *emergency* motion to set aside order (#203) on the motion to stay. (#204). On March 27, 2013, plaintiffs filed the instant *emergency* motion to stay discovery deadline (#209) and a limited objection to the court's order scheduling the hearing on the motion for clarification. (#210). On March 29, 2013, the court entered an order rescheduling the hearing on the motion for clarification (#192) for April 19, 2013, and scheduling a hearing on the

motion to stay discovery deadline (#209) for April 19, 2013.  (#212).   On April 5, 2013, the court issued an order overruling defendants' objections (#185 and #195) and denying as moot NPL's motion for expedited review (#204).  (#223).  On the same day, defendant NPL filed a response to the motion to stay discovery deadline (#209) on April 5, 2013.  (#224).  The court issued a minute order on April 8, 2013, rescheduling the April 19, 2013, hearing for April 18, 2013.  (#228).   On April 15, 2013, plaintiffs filed a response to the motion for clarification (#192).  (#233).  The court held a hearing on April 18, 2013.

### B.        Motion For Clarification

Defendant NPL asserts in its motion that "[w]hile the depositions of the authors and recipients of the [logged] documents [ordered produced by the court (#190)] are permitted by the [c]ourt's [o]rder, because of the fact that a limtied number of privileged documents have been ordered produced and that much of the content of those documents has been ordered redacted, NPL anticipates questions will arise during the depositions as to what attorney-client communications may be the subject of questioning." (#192).  Plaintiffs state in their opposition that "NPL's present motion is unclear as to its request for relief, except to the extent that it seeks to confuse the issues in order to shield itself from discovery of relevant and non-privileged evidence."  (#233).  Plaintiffs argue that (1) "[p]laintiffs are allowed to ask deposition questions regarding communications that gave rise to, and resulted from, the attorney client communications NPL has been ordered to produce," (2) "[p]laintiffs are entitled to all documents in NPL's privilege log that pertain to any legal advice NPL received about immigration law and the immigration program," and (3) "[p]laintiffs are entitled to an order overruling NPL's instructions for its witnesses not to answer questions."  *Id.*

As stated during the hearing on this motion (#192), the court limits the scope of the follow-up questions to the following: (1) what NPL knew about the relevant immigration laws, (2) when NPL knew the information, and (3) what actions NPL took or decisions it made with that knowledge.

Defense counsel may object and instruct the witness not to answer questions which seek privileged communications or information outside these permitted follow-up inquiries.  If an issue arises during the depositions, the parties may call the undersigned magistrate's chambers for guidance.  With regard to plaintiffs' argument that they are entitled to *all* documents in NPL's privilege log that pertain to any legal advice NPL received about immigration law and the immigration program (#233), the court has already spent judicial resources reviewing the privilege log and logged documents and issuing an order requiring redactions and disclosure of relevant documents (#190).  The court will not go through this process again.

### C.    Motion to Stay and Extend the Discovery Deadline

Plaintiffs assert in their motion that "[p]laintiffs have been at a disadvantage in conducting discovery while waiting on a resolution to the attorney-client privilege issue," and that the April 1, 2013, discovery was "even under the best of circumstances, never going to work."  (#209)  Plaintiffs state that "[i]n attempts to work around this discovery deadline the parties have already agreed to take numerous depositions outside of the discovery deadline," including "key witnesses such as NPL's former CEO, Mike Kemper, NPL's Director of Employee Relations and attorney, Ricardo Pringle and various fact witnesses."  *Id.*  Plaintiffs also state that "various discovery related to expert reports will be required because various expert report deadlines have also been extended."  *Id.*

Defendant NPL argues that the motion should be denied, because (1) the parties have already extended the discovery period three times, (2) the parties "mutually agreed that a number of specific discovery items – mostly depositions – should take place after the April 1, 2013, discovery deadline," and (3) NPL has also faced obstacles during discovery and is not seeking a "do-over" as plaintiffs are. (#224).  Plaintiffs' counsel stated during the hearing that plaintiffs believe discovery should be extended for sixty (60) days after the last deposition because follow-up discovery may be required.  The court finds that good cause exists to extend the discovery deadline, but that plaintiffs have not demonstrated

that a discovery extension of sixty (60) days after the last deposition is conducted is warranted at this time.  Discovery cannot go on indefinitely, and the court has a duty to ensure the "just, speedy, and inexpensive determination" of this matter.  *See* Federal Rule of Civil Procedure 1.  On or before April 25, 2013, the parties must meet and confer in a good faith effort to agree upon a schedule and a definite discovery deadline and file a stipulation with the court.  If the parties are unable to agree, the stipulation must state *specific* issues and provide the court with the parties' positions regarding the issue.

Accordingly and for good cause shown,

IT IS ORDERED that defendant NPL's Motion for Clarification of a Portion of the Court's Order (#192) is GRANTED.

IT IS THEREFORE ORDERED that follow-up questions during the depositions are limited in scope to the following: (1) what NPL knew about the relevant immigration laws, (2) when NPL knew the information, and (3) what actions NPL took or decisions it made with that knowledge.  Defense counsel may object and instruct the witness not to answer questions which seek privileged communications or information outside these permitted follow-up inquiries.  If an issue arises during the depositions, the parties may call the undersigned magistrate's chambers for guidance.

IT IS FURTHER ORDERED that the plaintiffs' Motion to Stay and Extend the Discovery Deadline (#209) is GRANTED in part and DENIED in part, as discussed above.

IT IS THEREFORE ORDERED that, on or before April 25, 2013, the parties must meet and confer in a good faith effort to agree upon a schedule and a definite discovery deadline and file a stipulation with the court.  If the parties are unable to agree, the stipulation must state *specific* issues and provide the court with the parties' positions regarding the issue.

DATED this 22nd of April, 2013.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE