# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\*\*\*

| | |
|---|---|
| GABRIEL HERNANDEZ, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>CREATIVE CONCEPTS, *et al.*,<br><br>Defendants. | 2:10-cv-02132-PMP -VCF<br><br><br>**ORDER**<br><br>**(Motion for Protective Order Protecting the Confidentiality of Privileged Documents Produced on April 12, 2013, #255)** |

    Before the court is the defendant NPL's Motion for Protective Order Protecting Confidentiality of Privileged Documents Produced on April 12, 2013. (#255). Plaintiffs filed an Opposition (#260), and defendants filed a Reply (#262).

    **A.**    **Relevant Background**

    Plaintiffs filed their first amended complaint on November 1, 2010, in the Eighth Judicial District Court, Clark County, Nevada, against defendants asserting claims for (1) breach of contract (against Creative Concepts), (2) breach of contract (against Northern Pipeline & NPL), (3) breach of confidential relationship, (4) breach of fiduciary duty, (5) fraudulent inducement, (6) fraudulent inducement, (7) negligent misrepresentation, and (8) negligent misrepresentation. (#1-3). Plaintiffs' amended complaint arises from their employment with Northern Pipeline Construction and NPL Construction Co. (hereinafter jointly referred to as "NPL") and immigration issues handled by John Speidel of Speidel Enterprises, Inc. d/b/a as Creative Concepts and Creative Concepts Inc (hereinafter jointly referred to as "Creative Concepts"). *Id.* Creative Concepts and NPL allegedly represented to plaintiffs that they would help plaintiffs become United States citizen through a labor certification

program (hereinafter "Program"). *Id.* Plaintiffs agreed to certain terms and entered into contracts in November of 2002 with Creative Concepts to begin assisting plaintiffs in becoming citizens. *Id.* The parties agreed that $20 or more would be deducted from the plaintiffs' paychecks as payment for these services. *Id.* Plaintiff alleges that "the entire five-plus year process was a sham concocted" by supervisors and managers at NPL with the assistance of other defendants." (#29).

Defendants removed the action to this court on December 8, 2010, based on federal question under 28 U.S.C. § 1331. (#1). Plaintiff filed a second amended complaint on June 27, 2011, adding new parties. (#29). On September 22, 2011, the parties filed a discovery plan and scheduling order, seeking a discovery cut-off date of July 21, 2012. (#54). The court signed the discovery plan and scheduling order (#54) on September 28, 2011. (#57). (#90). On August 22, 2012, the parties filed another stipulation to extend deadlines. (#103). The court signed the stipulation on August 23, 2012. (#104).

On October 29, 2012, plaintiffs filed a motion to compel. (#111). On November 27, 2012, defendant NPL filed a motion for leave to file excess pages (#118), an opposition to the motion to compel (#119), and a motion for protective order (#120). On December 19, 2012, plaintiffs filed a second certificate of conference (#129) and a reply in support of their motion to compel (#130). On December 27, 2012, defendant NPL filed a reply in support of its motion for protective order (#133), a motion for leave to file response to plaintiffs' second certificate (#129) (#134), and its response to the certificate (#135). Defendant NPL filed a motion for summary judgment on January 4, 2013. (#136). On January 6, 2013, defendant NPL filed a motion to strike plaintiffs' expert. (#138).

The court entered a minute order on January 11, 2013, scheduling a hearing on the motion to compel (#111) for February 12, 2013. (#141). Plaintiffs filed a notice of conflict with the scheduled date (#142), and the defendant NPL filed a response thereto (#145). NPL filed a motion for sanctions (#143) and a motion to compel (#144) on January 14, 2013. On January 16, 2013, the court issued a

minute order stating that "a hearing on the Motion for Leave to File Responsive Brief in Excess of Page Limitation (#118), Motion for a Protective Order (#120), and Request for Leave to Provide Response to Plaintiff's Second Certificate of Conference (#134) is scheduled for February 12, 2013 at 10:00 a.m. in Courtroom 3D, and that a hearing on the Defendant NPL Construction Co.'s Motion to Strike Plaintiffs' Designation of Expert Witness Dale Schwartz, Esq. and Accompanying Deficient Expert Report and to Preclude Mr. Schwartz from Testifying (#138) is scheduled for January 25, 2013." (#147). The parties filed a stipulation to reschedule the February 12, 2013, hearing. (#150). Plaintiffs filed an opposition to the motion to strike (#138) on January 20, 2013 (the parties stipulated for an extension of the response deadline (#154)), and filed a notice of supplement to expert report on January 22, 2013 (#153).

The court held a hearing on the motion to strike (#138) on January 25, 2013 (#157), and issued a written order on January 30, 2013, granting in part and denying in part the motion to strike (#138) (#162). On February 9, 2013, defendant NPL filed a SEALED motion for summary judgment (#170) and a motion to seal (#171). Plaintiffs filed an opposition to the motion for sanctions (#143) and motion to compel (#144) on February 10, 2013. (#172). On February 15, 2013, defendant NPL filed a reply in support of its motion for sanctions (#143) and motion to compel (#144). (#176). The court held a hearing on the pending discovery motions (#111, #118, #120, #134, #143, #144, and #171) on February 19, 2013. (#178).

Plaintiffs asserted in their motion to compel that despite the representations made to plaintiffs, "no such law existed that would allow an employer to sponsor illegal aliens present in the United States for an adjustment of their immigration status," and that "the unique opportunity provided by the LIFE Act expired on April 30, 2001 and has never been extended." (#111). Plaintiffs stated that one of the key fact issues in this case will be: "Did NPL know that the Program of was a fraud and when did [NPL] know it?" *Id.* Plaintiffs asserted that at some point "NPL knew that the Program would not, could not,

3

and never would, result in the plaintiff[s] being able to legally adjust [their] status," and that the question is **when** did NPL know. *Id.*

Plaintiffs contended that the privilege log produced (Exhibit 1) demonstrates that Mr. Pringle contacted an immigration attorney named Chris Brelje in early 2004, a purported expert in immigration law, and that "[n]umerous meetings, memos and other communications were held in early 2004 between Rick Pringle and Chris Brelje." *Id.* NPL claimed these communications are "attorney-client" and work-product privileged, and the plaintiffs argue that several exceptions to these privileges apply. *Id.* Defendant NPL sought a protective order and argued that the documents withheld pertain largely to: (a) Mr. Pringle's communications with specified NPL employees to obtain information required to provide legal advice; (b) Mr Pringle's communications with NPL to convey legal advice; (c) his communications with Mr. Brelje for the purposes of receipt of legal advice, or to enable Mr. Brelje to provide that advice; (d) Mr. Pringle's notes of conversations where he carried out those functions; and (e) communications between NPL employees and other counsel for NPL in order to provide legal advice, such as preparing declarations in other litigation and workers compensation claims.  (#120).

On February 20, 2013, the court entered an order granting in part and denying in part plaintiffs' motion to compel (#111) and defendant NPL's motion for protective order (#120).  (#179).  The court held that, "in the circumstances of this case, "[t]he proper procedure for asserting the attorney-client privilege as to particular documents, or portions thereof, [is] for [NPL] to submit them *in camera* for the court's inspection, providing an explanation of how the information fits within the privilege." *In re Horn*, 976 F.2d 1314, 1318 (9th Cir. 1992)(quoting *In re Grand Jury Witness (Salas)*, 695 F.2d 359, 362 (9th Cir.1982))." *Id.*  The court stated that "[p]laintiff has made a sufficient showing that the crime-fraud exception and the "at issue" exception may, depending on the content of the logged documents, apply to one or more of the communications revealing knowledge of the status of immigration law while the Program was in effect." *Id.*  The court also stated that:

> The remaining claims against NPL are (1) breach of confidential relationship, (2) negligence, to the extent not based on negligent supervision of managers, (3) fraudulent inducement, and (4) civil RICO. (#29). The court finds that *what* NPL knew regarding immigration laws and whether the Program would result in the plaintiffs obtaining legal status and *when* NPL gained this knowledge is relevant to the remaining claims against NPL. *Oppenheimer Fund*, 437 U.S. at 351. The court recognizes, however, the importance of the attorney-client privilege and the confidentiality afforded to communications between an attorney and client for the purpose of obtaining legal advice. *Richey*, 632 F.3d at 566.

*Id.* The court ordered that, "on or before March 5, 2013, defendant NPL must provide to the court for an *in camera* review all documents identified in the privilege log (#111 Exhibit 1) that contain the following words or phrases, or any portion thereof: "Immigration and Naturalization Act," "INA," "§ 245(i)," or "LIFE Act." If the entire production exceeds 50 pages in length, defendant NPL must provide the documents on disks in searchable PDF format." *Id.*

On March 5, 2013, defendant NPL filed a notice of production of documents ordered for *in camera* inspection by the court (#184) and submitted to the court the defendant's amended privilege log and a disk containing documents that fall within the parameters of the court's February 20, 2013, order (#179). On March 13, 2013, the court issued an order on the *in camera* review of the submitted documents. (#190). The court held that "several of the logged documents reveal <u>what</u> defendant NPL knew about the immigration laws and risks associated with the Program (compared to what it disclosed to plaintiffs) and <u>when</u> NPL gained this knowledge, which is relevant to plaintiff's claims against defendant NPL for breach of confidential relationship, negligence, fraudulent inducement, and civil RICO (as discussed above). *See* Federal Rule of Civil Procedure 34(a)*; Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978) (citation omitted)(for discovery purposes, relevance means only that the materials sought are reasonably calculated to lead to the discovery of admissible evidence)," and found that the "at issue" and the crime-fraud exceptions apply to several logged documents. *Id.* The court also held that "the attorney work-product rule does not protect NPL from disclosure of the five logged

documents the court orders produced..." *Id.* The court ordered the defendant NPL to produce portions of five of the logged documents. *Id.*

On March 15, 2013, the defendant NPL filed a motion for clarification of the court's March 13, 2013, order (#190), asking this court for clarification and direction as to the portions of the court's order pertaining to questions permitted in depositions of the authors and recipients of the documents ordered produced. (#192). The court issued a minute order on March 19, 2013, scheduling a hearing on the motion for clarification (#192). (#193). Also on March 19, 2013, the court issued an amended order requiring delivery of the logged documents to the undersigned Magistrate Judge's chambers. (#194). On March 21, 2013, defendant NPL filed an objection to this court's order regarding *in camera* review (#190) (#195), and an emergency motion to stay defendant NPL's production of logged documents (#196). On March 25, 2013, defendant NPL filed a second emergency motion to stay defendant NPL's production of logged documents. (#199).

On March 26, 2013, the court issued an order granting the defendant NPL's motion to stay (#199) and staying the production pending review of the undersigned's order. (#203). Also on March 26, 2013, plaintiffs filed an emergency motion for reconsideration of the court's order granting stay of document production (#203). (#204). On April 5, 2013, the Honorable District Judge Phillip Pro issued an order overruling the objections to this court's order regarding *in camera* review (#185 and #195), ordering defendant NPL to disclose the five logged documents with the redactions as identified in the undersigned's order (#194) on or before April 12, 2013, and denying as moot plaintiffs' emergency motion for expedited review and reconsideration of the motion to stay (#204). (#223).

On April 9, 2013, defendant NPL filed a motion for clarification of the court's April 5, 2013, order (#229), and the court issued an order granting the motion for clarification (#229) and stating that defendant NPL's production of the five logged documents "shall not constitute a waiver by Defendant NPL Construction Co. of its objection that the documents produced are covered by the attorney-client

privilege and/or work product doctrine as claimed by Defendant NPL Construction Co. in this case" (#230). On April 12, 2013, defendant NPL filed a notice of production of documents ordered produced by court orders (#190, #194, and #223). (#231). On May 13, 2013, defendant NPL filed the instant motion for a protective order protecting the confidentiality of the privileged documents produced on April 12, 2013. (#255). Plaintiffs filed an opposition on May 28, 2013 (#260), and defendant NPL filed a reply on June 7, 2013 (#262).

**Motion for Protective Order**

    A.    **Relevant Facts**

Defendant NPL state that the parties agreed to and filed a stipulated protective order (#86) which the court signed on May 23, 2012 (#87), providing for a party to designate certain documents that contain information that meets the definition of "Confidential Information" as "Confidential." *Id.* The protective order further provides that "Confidential Information" is defined as information including, but not limited to, "proprietary information concerning the internal operations, processes and procedures of NPL not generally known and which would be of an economic or strategic value to their competitors..." (#87). The stipulated protective order states that the party may designate documents confidential, and that the corresponding party may object to the designation within 10 days: if the parties cannot resolve the issue, the moving party may file a motion for protective order within thirty days. *Id.*

Defendant NPL designated the five logged documents as "Confidential" and produced them to plaintiffs on April 12, 2013. (#255). Plaintiffs objected to this designation on April 12, 2013. *Id* (Exhibit 2). The parties attempted to resolve this issue informally, but were unable to do so. *Id.* Defendant NPL filed the instant motion on May 13, 2013. *Id.*

    B.    **Arguments**

Defendant NPL asks this court to issue a protective order regarding the five logged documents produced pursuant to this court's orders (#190, #194, and #223), and argues that "there exists a

substantial risk that Plaintiffs or their counsel: (1) will publicize or disclose to third parties these privileged documents or their substance; or (2) will file these privileged documents or disclose the substance of these privileged documents in subsequent filings with the Court, rendering them exposed to the public." (#255). Defendant NPL represents to the court that the "[p]laintiffs' counsel has already publicized descriptions of the Court's March and April orders on his web site," and that "there is a true risk that he may go further by publicizing or disclosing to third parties the actual privileged documents themselves." *Id* (Exhibit 1 Excerpts from plaintiffs' counsel's website).

To prevent this from occurring, defendant NPL asserts that the court should enter a protective order that does the following:

(1) restricts any party who has received the privileged documents from using the privileged documents, or the information contained therein, for any purpose other than this case (subject to any further order of the Court restricting or precluding their use as evidence);

(2) prohibits publication or disclosure of the privileged documents, or the information contained therein, in any manner to non-parties without an order requiring those parties' acknowledgment of the application of such an order; and

(3) requires any party who files any of the privileged documents as an exhibit, or any motion, pleading, paper or response/opposition thereto that includes the substance of any privileged document, to file that exhibit, motion, pleading or paper under seal pursuant to the procedures of the United States District Court District of Nevada's Case Management/Electronic Case Filing System ("CM/ECF").
*Id.*

Defendant NPL argues that "[b]ased upon recent precedent from the Ninth Circuit Court of Appeals, privileged documents, as a matter of law, fall under the category of those that are: "traditionally kept secret," meaning compelling reasons are not needed for an order requiring that they be filed under seal. *See Lambright v. Ryan*, 698 F.3d 808, 820 (9th Cir. 2012); *Kamakana v. City &*

*County of Honolulu*, 447 F.3d 1172, 1184-85 (9th Cir. 2006)." *Id.* Defendant also argue that "even if this were not the case, ample precedent supports the proposition that the public's interest in honoring the attorney-client privilege and work product doctrine, as a matter of law, outweigh the public's interest in accessing the courts and presents a compelling reason for a protective order requiring the privileged documents be filed under seal. *See, e.g., Asdale v. Int'l Game Technology*, No. 3:04-CV-703-RAM, 2010 WL 2161930 (D. Nev. May 28, 2010)." *Id.*

Plaintiffs assert that the logged documents "NPL was ordered to produce do not contain any information as to how NPL runs its business, nor do[] [they] contain any trade secrets or information regarding any research or development NPL has conducted in its relevant field," and they "do not fit under the definition of "Confidential Information" as stated in the Stipulated Protective Order." (#260). Plaintiffs argue that the motion should be denied because (1) "[t]he Public Will Not Be Harmed By A Lack Of Protective Order In This Case Because The Documents Are Not Privileged And Are Not The Category Of Documents "Traditionally Kept Secret," (2) "NPL Has Not Made The Requisite Specific Showing Of Good Cause In Support Of Its Request For A Protective Order," and (3) denial would serve the court's interest in preserving judicial resources. *Id.*

Defendant NPL argues in their reply that plaintiffs' discussion regarding these documents not falling under the definition of "Confidential Information" provided in the parties stipulated protective order (#87) is a "red-herring," as the protective order has little relevance to its motion. (#262). Defendant NPL asserts that the District Judge's order overruling defendant's objections clearly states that:

> In addition to the above evidence, an <u>in camera</u> review of the identified five documents could lead a reasonable fact finder to determine NPL used Brelje's advice to determine when the risks of its course of conduct outweighed the benefits. The *evidence does not compel that conclusion*, and it is not the only reasonable view of the evidence.

(#223)(emphasis added by defendant). Defendant NPL states that "[g]iven that the burden of proof for the application of the crime-fraud exception in a civil case in the Ninth Circuit is "preponderance of the evidence," the evidence supporting the existence of the crime-fraud exception, should have "compel[led] the conclusion" that the exception applied, if it did. But that Court was clear that was not the case." *Id.*

Defendant NPL also states that the court's order (#230) granting the motion for clarification belies plaintiffs' assertion that the crime fraud exception has extinguished defendant's privilege with respect to the documents at issue. *Id.* The court held in it order that "Defendant NPL Construction Co.'s production to other parties of the documents compelled to be produced by and listed in the Orders at Docket Nos. 190 and 194 as well as the Order at Docket No. 223 shall not constitute a waiver by Defendant NPL Construction Co. of its objection that the documents produced are covered by the attorney-client privilege and/or work product doctrine as claimed by Defendant NPL Construction Co. in this case." (#230). Defendant NPL argues that "[i]f the Court held that the crime-fraud exception extinguished the privileged nature of the documents, it would have surely denied NPL's Motion for Clarification as moot." (#262).

Defendant NPL argues that "reality is that an order that requires the production of asserted-privileged documents in the discovery phase of a case pursuant to the crime-fraud exception to the attorney-client privilege is very often not necessarily the final word on whether that exception will be applied to allow those documents to actually be used in the case." *Id*[1]. Defendant NPL also argues that "[t]he interests supporting the Court's entering a protective order exist irrespective of whether the Court has formally found the attorney-client communications and work product to be "privileged."" *Id.* Defendant NPL contends that "[t]he compelling interests of NPL and the public at large in NPL's attorney-client communications and work product being kept confidential originate not when the

---

[1] Defendant cites *Union Camp Corp. v. Lewis,* 385 F.2d 143, 144 (4th Cir. 1967) and *Haines v. Liggett Grp. Inc.*, 975 F.2d 81 (3d Cir. 1992) in support of their position.

elements of the attorney-client privilege or work product doctrine are met and the elements of any exception are not met. Rather, those interests exist when such documents relate to the attorney's representation of a client in any respect." *Id.*

Defendant NPL asserts that they have met their burden of demonstrating not just good cause, but compelling interests that support a protective order. *Id.* Defendant NPL states that "the facts are undisputed that each of the documents is either an attorney-client communication or contain attorney work product, which NPL has contended are privileged," and that "[c]onsequently, a particularized showing of not just good cause but compelling interests have been made with respect to each document." *Id.* Defendant NPL also states that "[e]ach of the documents contain or evidence either attorney-client communications or attorney work product showing a discussion of immigration law issues or evidencing NPL's consultation of outside immigration counsel, which if viewed by a customer or potential customer out of context could, lead to an erroneous conclusion that NPL presently employs or might presently employ undocumented workers leading to doubts as to whether NPL could fulfill its commitments or remain in business to complete the projects for which it is bidding." *Id.*

Defendant NPL's final argument is that the requested relief does not prejudice plaintiffs in any way, as all such an order would do is "restrict their use of the documents only to their case (subject to an order precluding such use as evidence), prohibit the documents' publication or disclosure to third parties, and require that the documents or any document containing their substance be filed under seal." *Id.*

**C.     Relevant Law/Discussion**

Defendant NPL asks this court to enter an order that:

(1) restricts any party who has received the privileged documents from using the privileged documents, or the information contained therein, for any purpose other than this case (subject to any further order of the Court restricting or precluding their use as evidence);

(2) prohibits publication or disclosure of the privileged documents, or the information contained therein, in any manner to non-parties without an order requiring those parties' acknowledgment of the application of such an order; and

(3) requires any party who files any of the privileged documents as an exhibit, or any motion, pleading, paper or response/opposition thereto that includes the substance of any privileged document, to file that exhibit, motion, pleading or paper under seal pursuant to the procedures of the United States District Court District of Nevada's Case Management/Electronic Case Filing System ("CM/ECF"). (#255).

The court finds that a discussion of the nature of attorney-client privileged material is warranted. The Ninth Circuit held in *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178-89 (9th Cir. 2006), that:

> Unless a particular court record is one "traditionally kept secret," a "strong presumption in favor of access" is the starting point. ... A party seeking to seal a judicial record then bears the burden of overcoming this strong presumption by meeting the "compelling reasons" standard. ... that is, the party must "articulate[ ] compelling reasons supported by specific factual findings," that outweigh the general history of access and the public policies favoring disclosure ....
>
> In general, "compelling reasons" sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such "court files might have become a vehicle for improper purposes," such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets. ... The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records.

The court in *Kamakana* also recognized that the consequence of a document being categorized as one that is "traditionally kept secret" are drastic: "there is no right of access to documents which have traditionally been kept secret for important policy reasons,"..., meaning that a party need not show "compelling reasons" to keep such records sealed." *Kamakana* 447 F.3d at 1185. The court went on to

say "[w]e do not readily add classes of documents to this category simply because such documents are usually or often deemed confidential." *Id.*

The Ninth Circuit addressed the issue of material "traditionally kept secret" in *Lambright v. Ryan*, 698 F.3d 808, 820 (9th Cir. 2012) cert. denied, 133 S. Ct. 2770 (U.S. 2013), and, in citing *Foltz v. State Farm Mut. Auto. Ins*. Co., 331 F.3d 1122, 1134 (9th Cir.2003), stated that "materials that are sealed during discovery presumptively may not remain sealed once they are filed with the court for public policy reasons unless the materials in questions are of a type that "have traditionally been kept secret for important policy reasons."  The court clearly stated that "[a]ttorney-client privileged materials, of course, are archetypical examples of material that has traditionally been kept secret for important policy reasons. *See, e.g., United States v. Jicarilla Apache Nation*, ––– U.S. ––––, 131 S.Ct. 2313, 2320, 180 L.Ed.2d 187 (2011)." *Lambright*, 698 F.3d at 820.[2]

The Ninth Circuit, therefore, recognizes that attorney-client communications are "traditionally kept secret" and would not require "compelling reasons" or a "particularized showing of good cause" before such materials are filed with the court under seal.  *See Lambright*, 698 F.3d at 820; *Kamakana* 447 F.3d at 1185.

This court's orders regarding the five logged documents acknowledged that the documents were attorney-client communications that are normally privileged and not disclosed, and, in ordering production, the court held that (1) under the "at-issue" exception, a party may <u>waive</u> the attorney-client privilege "if he makes factual assertions, the truth of which can only be assessed by examination of the privileged communications," (2) that the truth of the defendant's affirmative defenses "can only be assessed by examination" of several logged communications demonstrating NPL's actual knowledge of the legalities of Program and when it gained this knowledge, and that the "at issue" exception applies to these communications," (3) that "NPL's state of mind (intent/good faith), knowledge of the legality and

---

[2] Given this law of the Circuit, plaintiffs' arguments based on trade secret analysis, the definition of "Confidential Information" in the Protective Order, and balancing hardships and prejudice (#260), are not persuasive.

benefits/risks of the Program, representations/disclosures, and allegedly negligent acts are "at issue" in this action and are necessary elements of plaintiffs' remaining claims," (4) the "crime-fraud exception is a "generally recognized <u>exception</u> to th[e] [attorney-client] privilege," and applies when communications between the attorney and client are "in furtherance of future illegal conduct..." (5) "that the crime-fraud exception applies to several logged documents, as the documents evidence communications between NPL and counsel, where NPL is seeking advice from counsel or obtaining advice from counsel in furtherance of the alleged fraudulent acts surrounding the Program," (6) it recognized the privileges asserted by the defendant and applied the exceptions narrowly, (7) it recognized the "the confidential nature of the communications at issue," (8) that a "client <u>waives</u> his right to assert the attorney work product privilege for both ordinary and opinion work product when the client consults the attorney in furtherance of a crime or fraud," and (9) the "attorney work-product rule does not protect NPL from disclosure of the five logged documents the court orders produced..." (#190, #194, and #223)(emphasis added).

The court also clarified that "NPL Construction Co.'s production to other parties of the documents compelled to be produced by and listed in the Orders at Docket Nos. 190 and 194 as well as the Order at Docket No. 223 shall not constitute a waiver by Defendant NPL Construction Co. of its objection that the documents produced are covered by the attorney-client privilege and/or work product doctrine as claimed by Defendant NPL Construction Co. in this case." (#230).

As such, we begin with the notion that the five logged documents at issue here are confidential communications that are "traditionally kept secret," and that the court determined that defendant NPL "waived" the attorney-client privilege and that exceptions apply. The court's determination that the logged documents must be produced to the plaintiffs was in relation to the specific allegations and defenses presented *in this action*, and in no way deemed the communications non-confidential. (#190, #194, and #223). The plaintiffs should not be permitted to use these documents for purposes outside

this litigation, especially when such communications are normally confidential for "important policy reasons." *See Lambright*, 698 F.3d at 820.

Defendant NPL asks this court to issue an order (1) restricting the use of the logged documents for any other purpose than this case, (2) prohibiting publication or disclosure of the logged documents in any manner to non-parties without an order requiring such, and (3) requiring any party that wishes to file the documents with the court under seal.  (#255).  As these logged documents were ordered produced due to an exception and waiver that apply in light of the facts, allegations, and defenses of *this action,* the court finds that use of these documents for purposes other than in this action is improper. The court also finds that the publication or disclosure to non-parties of the logged documents is improper due to the confidential nature of the documents and the important public policy reasons supporting confidentiality of attorney-client communications.  As the court in *Kamakana* and *Lambright* recognized, since the logged documents contain attorney-client communications that are "traditionally kept secret" and "there is no right of access to documents which have traditionally been kept secret for important policy reasons," the court finds that the parties need not file a motion with the court demonstrating "compelling reasons" or good cause in order to file the logged documents, or information contained therein, under seal.  *See Lambright*, 698 F.3d at 820; *Kamakana*  447 F.3d at 1185.  This order does not extend to the use of such documents at trial, and defendant NPL may submit a motion to the District Judge regarding the use of any logged documents at trial.

Accordingly and for good cause shown,

IT IS ORDERED that defendant NPL's Motion for Protective Order Protecting Confidentiality of Privileged Documents Produced on April 12, 2013 (#255) is GRANTED.

IT IS THEREFORE ORDERED that:

(1) any party who has received the five logged documents is restricted from using the documents, or the information contained therein, for any purpose other than this case (subject to any further order of the Court restricting or precluding their use as evidence);

(2) publication or disclosure of the five logged documents, or the information contained therein, in any manner to non-parties without an order requiring those parties' acknowledgment of the application of such an order is prohibited; and

(3) any party who files any of the five logged documents as an exhibit, or any motion, pleading, paper or response/opposition thereto that includes the substance of any privileged document, <u>must</u> file that exhibit, motion, pleading or paper under SEAL pursuant to the procedures of the United States District Court District of Nevada's Case Management/Electronic Case Filing System.

DATED this 23th day of July, 2013.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE