UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

GABRIEL HERNANDEZ, RODOLFO
NAVA, IVAN MADRIGAL,
FRANCISCO CASTILLO, JOEL ROSA
DE JESUS, JUAN CARLOS
NAVARRETE, JUAN JOSE ACOSTA
FLORES, ISMAEL AMPARAN-COBOS,
EFREN RUANO, JUAN PALOMERA,
OCTAVIO ANCHONDO, ARNOLDO
RODRIGUEZ, and JESUS ANCHONDO,

         Plaintiffs,

v.

CREATIVE CONCEPTS, INC.; SPEIDEL
ENTERPRISES, INC.; JOHN SPEIDEL,
PAUL SCHELLY; NORTHERN
PIPELINE CONSTRUCTION CO.; and
NPL CONSTRUCTION CO.,

         Defendants.

ORDER

2:10-CV-02132-PMP-VCF

Presently before the Court is Defendant NPL Construction Co.'s Motion for Summary Judgment Seeking Dismissal of All Claims Asserted by Plaintiff Ivan Madrigal Based Upon his General Release of Claims (Doc. #170), filed on February 9, 2013. Plaintiff Ivan Madrigal filed an Opposition (Doc. #187/#188) on March 11, 2013. Defendant filed a Reply (Doc. #225) on April 6, 2013.

**I. BACKGROUND**

      The parties are familiar with the facts of this case and the Court will not repeat them here except where necessary. Defendant NPL Construction Co. ("NPL") moves for summary judgment on all claims asserted by Plaintiff Ivan Madrigal ("Madrigal") based on

1

1  a general release provision contained in a settlement agreement Madrigal entered into with

2  NPL shortly before this lawsuit was filed.

3          On November 14, 2009, Madrigal and NPL entered into a Full and Complete

4  Confidential Settlement Agreement and Release of Claims ("Agreement"), which settled

5  wage and hour claims in a separate lawsuit against NPL that were unrelated to the claims in

6  the present action before this Court.  (Mot. for Summ. J. Seeking Dismissal of All Claims

7  Asserted by Ivan Madrigal Based Upon his Gen. Release of Claims (Doc. #170) ["MSJ"],

8  Ex. 1, Attach. E at 1.)  In the separate lawsuit, Madrigal was represented by the law firm

9  Reich, Adell & Cvitan, P.C.  (MSJ, Ex. 1 at 2.)  By the time the Agreement was executed,

10 Madrigal and the other Plaintiffs in this action had retained counsel, Stanley Broome

11 ("Broome") of the Broome Law Firm, to represent them with respect to the claims at issue

12 in this case.  (Pl. Ivan Madrigal's Opp'n to Def. NPL's Mot. Summ. J. (Doc. #188)

13 ["Opp'n"], Ex. 4 at 1.)  At the time the parties executed the Agreement, NPL and its

14 attorneys were aware that Madrigal was represented by Broome in relation to Madrigal's

15 claims at issue in this case.  (Opp'n, Ex. 3 at 2; MSJ, Ex. 1, Attach. B at 208 (Madrigal

16 testifying at his deposition, attended by NPL's attorney, that his counsel in the wage and

17 hour lawsuit was not representing him in this lawsuit).)  However, neither Madrigal's

18 counsel at Reich, Adell & Cvitan, P.C. nor NPL's counsel contacted Broome regarding the

19 negotiation and execution of the Agreement.  (Opp'n, Ex. 4 at 2.)

20         Section III.A.2 of the Agreement provides:

21     [Madrigal] hereby release[s NPL] . . . from any and all claims,
       grievances, demands or causes of action which [Madrigal] may own or
22     hold at any time prior to the date of this Agreement.  The scope of this
       Agreement's Release is specifically intended to include, but is not
23     limited to, any and all claims, demands or causes of action for wages,
       compensation or benefits for services rendered; any claim under Title
24     VII of the Civil Rights Act of 1964 . . . or any other federal, state or
       local law, regulation, or ordinance prohibiting employment
25     discrimination, dictating the payment of wages to employees, or
       otherwise governing the employment relationship.  This Agreement's
26     Release also includes, but is not limited to, any claim for negligent or

2

intentional infliction of emotional distress, defamation, slander, libel, fraud, misrepresentation, termination in violation of public policy, wrongful termination, retaliation, breach of contract (whether written, oral, or implied), breach of the implied covenant of good faith and fair dealing, or any other claim, however styled, relating to or arising out of [Madrigal's] employment with [NPL] prior to or on the date [Madrigal signs] this Agreement. This Agreement's Release does not include any claim for violation of the California Workers' Compensation Act brought before the California Workers' Compensation Appeals Board.

(MSJ, Ex. 1, Attach. E at 2-3.) Section IV.10 provides that if any party to the Agreement brings an action to enforce it, the prevailing party is entitled to recover costs, expenses, and attorney's fees. (Id. at 9.)

Madrigal was one of several Plaintiffs who filed this action against NPL on December 4, 2009, less than a month after Madrigal and NPL executed the Agreement. (MSJ, Ex. 4.) Nearly three years later, on November 27, 2012, NPL's current counsel in this action received a copy of the Agreement. (MSJ, Ex. 2 at 2.) The next day, NPL's counsel contacted Broome, advised him of the Agreement and its release of claims, and forwarded a draft stipulation of dismissal of Madrigal's claims against NPL in this action. (Id.) NPL disclosed a heavily redacted copy of the Agreement for the first time in a formal discovery response on November 28, 2012, as part of NPL's Third Supplemental Disclosures. (Opp'n, Ex. 5.)

NPL now moves for summary judgment on all claims asserted by Madrigal, arguing the general release in the Agreement bars Madrigal from pursuing his claims against NPL in this action. NPL contends Madrigal was represented by counsel when he signed the agreement, he and his counsel were aware of Madrigal's potential claims against NPL in this case when Madrigal signed the general release, and the general release by its terms applies to these claims. NPL also seeks attorney's fees and costs for having to bring this motion, a remedy provided for in the settlement agreement.

Plaintiff Madrigal responds that NPL failed to plead this affirmative defense in its Answer with sufficient factual support. Madrigal asserts that NPL's failure to timely

assert the defense has prejudiced Madrigal where NPL did not raise this argument until over three years after Madrigal filed this suit even though NPL was aware of it from the time the lawsuit was filed.  Madrigal further contends that NPL did not provide the Agreement in its initial disclosures and refused to provide Madrigal with information related to the Agreement during discovery once NPL finally asserted in late November 2012 that the Agreement barred Madrigal's claims, contending any such discovery would not be relevant. Madrigal asserts NPL cannot now claim the Agreement is relevant.

Madrigal argues he would be prejudiced by allowing NPL to raise this argument at this late date because he has not been given the opportunity to conduct discovery on the issue, and he disputes that he knowingly and intentionally entered into an agreement that waived his claims in this action.  Madrigal contends that when he learned NPL was asserting the Agreement barred his claims, he attempted to take discovery on the issue but NPL refused to provide any information.  Madrigal contends he would have deposed NPL's former attorney, who provided an affidavit in support of NPL's Motion, on issues such as why Madrigal's current attorney was not consulted regarding an agreement that would foreclose Madrigal's claims in this case when NPL knew at the time the Agreement was negotiated and executed that Madrigal was represented by different counsel in this case. Madrigal also contends he would have deposed other individuals involved in the settlement of the prior case to investigate their understanding of the Agreement.

On the merits, Madrigal argues that the release provisions in the Agreement should be voided and rescinded based on mutual mistake, as Madrigal did not intend to release his current claims.  Madrigal offers his own affidavit that he had no such intention. Madrigal argues there is evidence NPL's counsel also did not intend for the release to cover Madrigal's claims in this action because she knew Madrigal was represented by separate counsel, yet she did not contact counsel even though failure to do so would violate California Rules of Professional Conduct.  Additionally, Madrigal argues the Agreement

provides no separate consideration for releasing Madrigal's claims in this action. Moreover, Madrigal argues that NPL's failure to argue for years that the Agreement barred Madrigal's claims suggests NPL also did not believe the Agreement had that effect.

Alternatively, Madrigal moves to defer ruling on the Motion until Madrigal is permitted to conduct discovery on the issue. Madrigal contends that if discovery is permitted, NPL should have to pay for Madrigal's attorney's fees and costs for such discovery due to NPL's prior discovery-related conduct on this issue. Finally, Madrigal argues NPL is not entitled to attorney's fees or costs because NPL should not be the prevailing party. Instead, Madrigal asserts he should receive his attorney's fees and costs as the prevailing party.

NPL replies that any mistake was not mutual, and Madrigal presents no other evidence or substantive argument to preclude applying the release against him. NPL contends it pled this affirmative defense in its Answer, and affirmative defenses need not meet the pleading standard for complaints. NPL further contends that even if it did not adequately plead the defense in its Answer, it nevertheless should be allowed to raise it now because Madrigal is not prejudiced. NPL asserts that from the time NPL provided the Agreement in November 2012, Madrigal has done little to pursue discovery on the issue, and did not indicate any concerns regarding NPL's responses to Madrigal's discovery requests. Finally, NPL contends the attorney affidavit supporting Madrigal's request to defer ruling on the Motion pending further discovery is deficient.

**II. DISCUSSION**

In NPL's Answer to the Second Amended Complaint, NPL asserts as its twenty-fifth defense that "Plaintiffs' claims are waived or released." (Def. NPL Constr. Co.'s Answer to Pls.' Second Am. Compl. (Doc. #43) at 11.) Madrigal contends this defense is inadequately pled because affirmative defenses must be plead with sufficient factual support to be plausible, just as complaints must be pled under Bell Atlantic Corp. v.

Twombly, 550 U.S. 544 (2007).  NPL responds that Twombly does not apply to affirmative

defenses.  Alternatively, NPL argues that even if Twombly applies, controlling authority

permits a defendant to assert unpled or inadequately pled affirmative defenses for the first

time at the summary judgment stage.

The Court need not decide whether Twombly sets the pleading standard for

affirmative defenses[1] because NPL's affirmative defense fails even under the more liberal

pleading standard which controls if Twombly does not apply.  Under pre-Twombly law,

"[t]he key to determining the sufficiency of pleading an affirmative defense is whether it

gives plaintiff fair notice of the defense."  Wyshak v. City Nat'l Bank, 607 F.2d 824, 827

(9th Cir. 1979) (per curiam).

NPL's twenty-fifth affirmative defense refers to waiver "or" release.

Consequently, it is unclear whether Plaintiffs are alleged to have waived their claims or

released their claims.  Moreover, at the time NPL filed its Answer, there were thirteen

Plaintiffs identified in the caption.  By lumping all Plaintiffs together, NPL did not give fair

notice as to which Plaintiffs allegedly waived or released their claims, much less whether

each particular Plaintiff is alleged to have waived his claim or to have released it.  Even

without requiring sufficient factual allegations to establish a plausible entitlement to relief

under Twombly, NPL's twenty-fifth affirmative defense did not give fair notice to Plaintiff

Madrigal that NPL was asserting as an affirmative defense that Madrigal had released his

claims against NPL.  See Woodfield v. Bowman, 193 F.3d 354, 362 (5th Cir. 1999) (stating

that "baldly 'naming' the broad affirmative defenses of 'accord and satisfaction' and

---

[1] No circuit has decided this issue.  The district courts, including this Court, are divided over the question.  See, e.g., Barnes v. AT & T Pension Ben. Plan–Nonbargained Program, 718 F. Supp. 2d 1167, 1171-72 (N.D. Cal. 2010) (collecting cases); Hayne v. Green Ford Sales, Inc., 263 F.R.D. 647, 649-50 nn.14-15 (D. Kan. 2009) (collecting cases). Compare Ferring B.V. v. Watson Labs., Inc. - (FL), No. 3:11-CV-00481-RCJ-VPC, 2012 WL 607539, at *2-3 (D. Nev. Feb. 24, 2012) (unpublished), with Valley Health Sys. LLC v. Total Elec. Servs. & Supply Co., No. 2:10-CV-0949-LRH-LRL, 2010 WL 4456917, at *2 (D. Nev. Oct. 29, 2010) (unpublished).

'waiver and/or release' falls well short of the minimum particulars needed to identify the affirmative defense in question and thus notify [the third party plaintiff] of [the third party defendant's] intention to rely on the specific, contractual defense of requiring the [insureds] to obtain the insurer's consent before settling with [the third party plaintiff]").

Release is an affirmative defense, and the failure to properly raise an affirmative defense in the defendant's answer waives that defense.  In re Cellular 101, Inc., 539 F.3d 1150, 1155 (9th Cir. 2008); Fed. R. Civ. P. 8(b), (c).  However, the United States Court of Appeals for the Ninth Circuit has "liberalized the requirement that defendants must raise affirmative defenses in their initial pleadings."  Magana v. Commonwealth of the N. Mar. I., 107 F.3d 1436, 1446 (9th Cir. 1997).[2]  The Court has discretion to permit a defendant to raise an affirmative defense for the first time in a motion for judgment on the pleadings or at summary judgment, but "only if the delay does not prejudice the plaintiff."  Id.; Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1023 (9th Cir. 2010).

However, none of the Ninth Circuit cases allowing a defendant to raise an unpled or inadequately pled affirmative defense for the first time in a motion for judgment on the pleadings or a motion for summary judgment evaluated whether the defendant should be required to meet Federal Rule of Civil Procedure 16(b)'s "good cause" standard if a scheduling order is in place.  Additionally, to the extent these cases stand for the proposition that prejudice to the plaintiff is the only inquiry, these cases truncate the Rule 15(a) analysis, which, in addition to prejudice to the opposing party, considers bad faith, undue delay, futility of amendment, and whether the moving party previously has amended the pleading at issue.  United States v. Corinthian Colls., 655 F.3d 984, 995 (9th Cir. 2011); see also Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 711-12 (9th Cir. 2001)

---

[2]   See also Ledo Fin. Corp. v. Summers, 122 F.3d 825, 827 (9th Cir. 1997); Camarillo v. McCarthy, 998 F.2d 638, 639 (9th Cir. 1993); Rivera v. Anaya, 726 F.2d 564, 566 (9th Cir. 1984); Healy Tibbitts Constr. Co. v. Ins. Co. of N. Am., 679 F.2d 803, 804 (9th Cir. 1982) (per curiam).

1    (evaluating the propriety of amendment to add an unpled affirmative defense under the

2    Rule 15 factors, not just prejudice to the plaintiff).  Allowing a defendant to amend to add

3    an unpled or inadequately pled affirmative defense without evaluating all of the Rule 15(a)

4    factors is unwarranted.  A plaintiff is not permitted to raise a new or inadequately pled

5    claim at the summary judgment stage without meeting Rule 16(b) and Rule 15(a)'s

6    requirements.  See, e.g., Pickern v. Pier 1 Imports (U.S.), Inc., 457 F.3d 963, 968-69 (9th

7    Cir. 2006).  A defendant should fare no better.

8         Where a party seeks to amend a pleading after the pretrial scheduling order's

9    deadline for amending the pleadings has expired, the moving party must satisfy the stringent

10   "good cause" standard under Federal Rule of Civil Procedure 16(b), not the more liberal

11   standard under Rule 15(a).  AmerisourceBergen Corp. v. Dialysist West, Inc., 465 F.3d 946,

12   952 (9th Cir. 2006); see also Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-08

13   (9th Cir. 1992) (noting once a district court files a pretrial scheduling order under Federal

14   Rule of Civil Procedure 16 establishing a timetable for amending pleadings, that rule's

15   standards control).  Unlike Rule 15(a)'s liberal amendment policy, which focuses on undue

16   delay and prejudice to the other party, Rule 16(b)'s "good cause" standard centers on the

17   moving party's diligence.  Johnson, 975 F.2d at 609.  A "district court may modify the

18   pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking

19   the extension.'"  Id. (quoting Fed. R. Civ. P. 16 advisory committee's note (1983

20   amendment)).  "[C]arelessness is not compatible with a finding of diligence and offers no

21   reason for a grant of relief."  Id.  If the moving party is able to satisfy the good cause

22   standard under Rule 16, then the Court will examine whether amendment also is proper

23   under Rule 15(a).  Id. at 607-08.

24        By failing to adequately plead the defense and then raising the issue for the first

25   time at summary judgment, NPL effectively moves to amend its Answer to adequately plead

26   the affirmative defense of release against Plaintiff Madrigal.  The scheduling order in this

case, which includes dates that were stipulated to by the parties, sets the cutoff date for amending pleadings as November 1, 2012.  (Am. Scheduling Order (Doc. #104) at 5.)  NPL did not move for summary judgment on this issue until February 9, 2013, past the deadline to amend pleadings.  Accordingly, the Court, in its discretion, will decline to allow NPL to raise the affirmative defense of release against Madrigal for the first time in its summary judgment motion unless NPL can demonstrate good cause to amend the scheduling order, and also can show that amendment of its Answer is proper.  NPL shall file a brief on or before August 30, 2013, which addresses only whether amending the scheduling order under Rule 16(b) and amending NPL's Answer under Rule 15(a) is proper.  Madrigal shall file a response on or before September 10, 2013.  NPL shall file a reply by September 16, 2013.  The Court will deny NPL's Motion for Summary Judgment Seeking Dismissal of All Claims Asserted by Plaintiff Ivan Madrigal (Doc. #170), without prejudice to renew if NPL is permitted to amend to adequately plead its affirmative defense.

**III. CONCLUSION**

      IT IS THEREFORE ORDERED that Defendant NPL Construction Co. shall file a brief on or before August 30, 2013, which addresses only whether amending the scheduling order under Rule 16(b) and amending NPL's Answer under Rule 15(a) is proper.

      IT IS FURTHER ORDERED that Plaintiff Ivan Madrigal shall file a response on or before September 10, 2013.

      IT IS FURTHER ORDERED that Defendant NPL Construction Co. shall file a reply by September 16, 2013.

///

///

///

///

///

1        IT IS FURTHER ORDERED that Defendant NPL Construction Co.'s Motion for

2   Summary Judgment Seeking Dismissal of All Claims Asserted by Plaintiff Ivan Madrigal

3   Based Upon his General Release of Claims (Doc. #170) is hereby DENIED, without

4   prejudice to renew if NPL is permitted to amend its Answer to adequately plead its

5   affirmative defense.

6

7   DATED: August 16, 2013

8   _____

9   PHILIP M. PRO
    United States District Judge